FOLSOM *v.* HOWELL *et al.*, administrators, *et al.*

1. A demurrer to a petition as amended opens the merits of the whole pleading to a fresh adjudication, and a conditional order of dismissal made on the hearing of a previous demurrer to the original petition concludes nothing. Thus, where a petition was heard

on a demurrer thereto, and the presiding judge passed an order, not dismissing the petition, but declaring that it would be dismissed unless amended within a given time so as to make it good in law, this judgment was not final upon the merits, but the whole petition was open for amendment within the time limited, and another demurrer afterwards filed to the petition as amended should have been overruled if the petition as a whole set forth a cause of action, whether the matter contained in the amendment aided it or not.

2. If administrators in selling land as the property of their intestate represented the boundaries thereof as extending along certain lines from point to point, giving the length of each line, and thus misrepresented the extent and contents of the tract, whereby they were enabled to sell and did sell at a fixed price per acre a tract of land containing 38 and 6-10ths acres as a tract containing 50 acres, receiving payment accordingly, the purchaser was defrauded in so far as the money paid represented the price of the deficiency, whether the administrators knew their representations were false or not, provided the representations were accepted and treated by the purchaser as true and he acted and relied upon them in making his purchase, paying his money and receiving the conveyance. If the administrators did not know where the true boundaries of the tract were, they should not have taken upon themselves to point out the same or make any definite and positive representation concerning them which the state of their knowledge did not enable them to make with verity and correctness. While the doctrine of *caveat emptor* would charge the purchaser with looking out for the title which the decedent had to the tract offered for sale as his, it would not charge him with looking out for the boundaries of that tract when the administrators undertook to locate and point them out, thus professing to know them sufficiently to enable them to furnish this information to purchasers instead of leaving the latter to their own resources in acquiring the information.

3. The plaintiff is entitled to no land not embraced in his purchase, although some of the tract actually owned by the decedent may have been excluded therefrom.

4. The petition seems to be open to the objection of misjoinder of parties defendant, and direction is given that it be dismissed as to Mims and Alexander.

June 30, 1894.

Equitable petition. Before Judge LUMPKIN. Fulton superior court. September term, 1893.

Folsom filed his petition against Howell and Woodward as administrators of Clark Howell, and Alexan-

der and Mims, to reform a deed, and for other purposes. A, demurrer was interposed by the administrators, for want of a cause of action, and for misjoinder of parties defendant. Upon the hearing the court ordered that the petition be dismissed as to the administrators, unless the plaintiff should, by appropriate amendments filed within thirty days, make the same good in law. No exception was taken to this ruling. Within the thirty days plaintiff filed an amendment. The administrators demurred to the petition as amended; this demurrer was sustained and the case dismissed as to the administrators. Folsom excepted.

The original petition alleged: On the first Tuesday in March, 1890, petitioner purchased fifty acres of land in the southeast corner of land lot 153 in the 17th district of Fulton county, from said administrators, at public auction sale within the legal hours to the highest bidder before the court-house door, in two adjoining tracts of twenty-five acres each, according to the plat exhibited by them at the sale, paying $50 per acre for one tract and $42 per acre for the other tract. He paid them the full amount of the purchase money, and they executed to him a deed to the land, a copy of which is annexed. Several months afterwards he had the land surveyed, and discovered for the first time that instead of fifty acres as described in the deed and plat, there were only 38.6 acres; that if the land extended north from the south line of the land lot 1,710 feet, as described in the deed, it would lap over on the lands of Holbrook, Hughes and Osborne 520 feet to get the fifty acres and make the shortage which the estate of Clark Howell did not own and which the administrators had no right to sell or convey or receive purchase money for. At the same time it was discovered that said administrators' deed should have conveyed to petitioner, instead of 1,275 feet west from the southeast corner of

the land lot, 1,418 feet west from the southeast corner, which is the true distance from the southeast corner west to the center of the south line of said land lot, and which was owned by said estate and included in the order of sale granted by the court of ordinary for the sale of said land by the administrators, and in the advertisement of the sale. So that the deed should really have been for a tract commencing at the southeast corner of the land lot and running thence west along the land lot line to the center of the south line of the land lot 1,418 feet, and extending north the same width 1,186 feet to the land of Holbrook, Hughes and Osborne, containing 38.6 acres. He duly informed the administrators of said shortage, and upon investigation they admitted there was a shortage, and promised to reform the deed and make it conform to the true metes and bounds and dimensions of the tract as above shown, but have failed to do so. Alexander and Mims own the land adjoining said tract on the west, and although their land, as described in their deed, extends only to the middle of said land lot, along said south line thereof from the west towards this land, and they have had no possession farther east than the middle of such line, which is 1,418 feet from each the southwest and southeast corners of the land lot, they claim 138.5 feet more to a point on said south line only 1,275 feet west from said southeast corner to an old stone, which is not the true corner although for a while it was believed to be the center of said south line, but which is really 138.5 feet east of the center as above shown, and to which 138.5 feet they have no title and have never had possession, but which properly belongs to petitioner and ought to be included in his deed from the administrators, and the title thereto quieted in him as against Alexander and Mims or any one claiming under them. Petitioner has overpaid as above shown the administrators for said land, to wit for 11.4 acres at

the average price of $46 per acre, which they should be required to refund to him, with interest since March 4, 1890. He prayed, that it be decreed that the administrators' deed to him be reformed so as to convey the true and proper tract as above shown, instead of the tract as described in the deed; that the administrators be required to properly convey the tract as above shown it really is, and ought to have been conveyed, including the 138.5 feet above described; that judgment be rendered against the administrators in his favor for the $525 with interest; that the title to said strip of 138.5 feet by 1,186 feet above described be quieted and decreed to be in him, and Alexander and Mims and all persons claiming under them be enjoined from claiming title to the same; and for general relief. Attached as an exhibit was an administrators' deed, dated March 4, 1890. It recited the order of the court of ordinary to sell the real estate of the deceased, and recited a consideration of $2,500. The land conveyed was described as "in land lot number 153 of the 17th district of Fulton county, being lots numbers 2 and 3 of the subdivision of the property of said Clark Howell deceased, as per plat exhibited on day of sale, said plat on file at office of G. W. Adair; commencing at a point on the southeast corner of land lot 153, and running thence north along the line 153 and 146, 1,710 feet, thence west 1,275 feet, thence south 1,710 feet to the south line of land lot 153, thence east 1,275 feet to the beginning point, containing fifty acres of land, be the same more or less."

The amendment to the petition alleged: The land does not lie on any particular road, but back out of sight in woods and hills, and is unimproved except a small clearing without any buildings, the rest being in virgin forest and thick undergrowth and in hills and valleys, so that it cannot be seen all over from any standpoint. The boundary lines at the time of the adminis-

trators' sale were imaginary, through thick woods and underbrush up and down hills, and were not marked out, so that no man not thoroughly familiar with the lines could find the tract or form any judgment as to its size or shape, without a competent survey. Petitioner, though informed about where the land was, was not familiar with it or its boundaries. Both the administrators were very familiar with and had known the land well for many years; each had owned tracts adjoining it, and had every opportunity of knowing all about it; while petitioner had no such opportunity or knowledge, and they well knew he was not familiar with the land. They publicly represented at the sale that they had divided the tract into two parcels, each containing twenty-five acres, and had their crier to so announce at the sale in the presence of one or both of them, before the bidding began. They exhibited at the same time a carefully prepared printed plat, which they represented to be the true shape and size of the land, which plat was in the form and style of those taken from actual surveys, but no survey had been made and the plat was false, though well calculated to deceive and did deceive plaintiff, who believed it to be true and from an actual survey. The land was put up for sale by the acre and bids asked for and received and cried by the acre, from various bidders including plaintiff, and both parcels were knocked down to him the highest bidder, one at $50 per acre and the other at $42 per acre. Both the administrators were and are prominent, of high standing in the community, and he relied upon their representations on that account, as well as upon their superior knowledge of the land, and so paid them the full amount of $2,300 for full fifty acres, and received from them their deed prepared by them; waiving nothing but supposing in good faith it to be a good and correct deed to the land. A copy of the deed is attached to the original

petition. He recorded the deed and procured the county surveyor to mark out the boundaries according to it, when to his surprise he then discovered that the deed was grossly wrong, that the tract was not shaped as described therein and that it only contained 38.6 acres, of which Alexander and Mims claimed 3.5 acres, as shown in the original petition, leaving a shortage of 11.4 acres, which at the average price of $46 per acre makes $524.40 excess overpaid; and if the 3.5 acres should be allowed Alexander and Mims it will make $685.40 excess. The excess with interest should be paid back to petitioner by said administrators and they should reform the deed so as to describe the land properly. He was actually misled, deceived and defrauded by said conduct and misrepresentations of the administrators at the sale, without fault on his part. The deficiency in the land is too great and works unconscionable injury and hardship on him, and is against equity and good conscience. He further shows that the deed ought to be reformed, because it does not conform to the order of sale and the advertisement under which the sale was made, copies of which are annexed. He further alleges, that as the sale was made for distribution among the heirs of the estate, one being the administrator Howell, and another of the heirs being the wife of Woodward, the greater reason exists why plaintiff should have the relief he seeks by this proceeding against said administrators. Therefore he prays, in addition to the prayers of the original petition, that if it be decided that the deed should not be reformed so as to describe the tract of land as it actually is, as shown in the original petition, then that the deed be reformed so as to conform to the order of sale and advertisement; and that if it be decided that the administrators are not liable to plaintiff as administrators, then that they be held liable as individuals to him for said excess of purchase money, and judgment

be rendered accordingly against them in his favor for the same with interest; that the true dividing line between said tract of land and that of Alexander and Mims be ascertained and fixed by decree in this case; and for general relief. The petition of the administrators for leave to sell showed, that the estate of the deceased consisted of various tracts of land, among them "fifty acres in the southeast corner of L. lot 153, adjoining the lands of J. M. Alexander, Garrett and A. P. Woodward." The order for sale recited, that it appeared that it was necessary, for the purpose of division and distribution, that the land be sold, and gave the administrators leave to sell for said purpose "the land fully described in said petition." The advertisement was of the sale of various tracts of land as the property of the deceased, and among them " fifty acres in the southeast corner of land lot number 153, adjoining the lands of J. M. Alexander, Garrett and A. P. Woodward." In both the petition and the advertisement the land was stated as being in the 17th district of Fulton county. The advertisement stated that the sale was for purposes of division.

The demurrer to the petition as amended set forth the following: Under the deed petitioner bought by the tract fifty acres of land more or less. The land, according to the metes and boundaries as expressed in the deed, amounts to the number of acres sold: the number of feet north and south is 1,710, and east and west 1,275, which amounts to fifty acres and eight poles; and if the title is not good to it, petitioner got all he was entitled to, just the interest the estate had. The administrators cannot bind the estate by a warranty in any conveyance or contract made by them, and are not personally bound by the deed, because the intention of their personal liability to petitioner is not distinctly expressed therein. The deed cannot be reformed to change the

number of feet in any direction, to make it less one way and more another, because to do so would show a deficiency in acres and give some ground to petitioner in his cause, and would make a cause of liability by the change when none before existed. The court construes and enforces contracts and does not make them. The administrators sold by the plat as they had a right to do, and petitioner must hold by the deed. No judgment of any court has declared the title to the property therein conveyed defective, and for aught that appears the title is perfect. No cause of action is set out which would entitle petitioner to recover, or authorize the court to grant the relief sought; and no allegation is sufficient to authorize the court to reform the deed. There is no equity in the petition; there is a misjoinder of parties, and as to Alexander and Mims an adequate and complete remedy at law to locate and establish the lines.

John L. Hopkins & Sons and Lewis & Green, for plaintiff. T. W. Latham and Candler & Thomson, for defendant.

Simmons, Justice.

The facts material to an understanding of the case appear in the official report. The head-notes read in connection with these facts, will be sufficiently understood without further elaboration. In support of the principle ruled in the second head-note, see 2 Warvelle on Vendors, 973, 974. *Judgment reversed, with direction.*