## NELSON, bishop, *et al. v.* ATLANTA, KNOXVILLE & NORTHERN RAILWAY COMPANY *et al.,* and *vice versa.*

1. A railroad company made to an owner of land lying near tracks used by it a written proposition to purchase a strip of such land "on the follow-ing terms, covenants, and conditions," setting out that the strip was to be used, in connection with other property, in a general plan for rail-road terminals, and agreements as to erecting a wall, moving a public street, not using certain land for stated purposes, etc. It provided: "the covenants and agreements herein stated to be incorporated in the deed to said property, so as to run with the land sold." The proposition was accepted in writing.    Later the purchaser assigned its rights to another company, and the seller, on receipt of the purchase-price made to such assignee a deed in which were included the covenants and agree-ments of the contract.    *Held,* that the contract was merged into the deed, and could not thereafter be enforced against the original purchaser as containing personal covenants.

2. If there was inserted in the deed to the assignee a provision that the covenants could not be enforced except upon a certain contingency, an equitable petition seeking specific performance against the grantee in the deed or one holding under it, without alleging the happening of the condition precedent, was subject to demurrer.

3. The petition for specific performance was demurrable, and there was no error in dismissing it.

JANUARY 10, 1911.

Petition for specific performance.    Before Judge Pendleton. Fulton superior court.    October 23, 1909.

·C. K. Nelson, as bishop of the Diocese of Atlanta, and as such successor to the bishop of the Protestant Episcopal Church in the Diocese of Georgia, and trustee of the Protestant Episcopal Church in the Diocese of Atlanta, and trustee for St. Philips Parish, filed an equitable petition against the Atlanta, Knoxville & Northern Railway Company, alleged to be a Georgia corporation, the Louis-ville Property Company, alleged to be a Kentucky corporation, and

the Louisville & Nashville Railroad Company, alleged to be a corporation of Kentucky, but also a common carrier in the State of Georgia and in the City of Atlanta. He alleged substantially as follows: On February 20, 1904, the plaintiff and the Atlanta, Knoxville & Northern Railway Company entered into the following contract: "The Atlanta, Knoxville & Northern Railway Company (hereinafter called the railroad) hereby proposes to Right Rev.. C. K. Nelson, Bishop of Georgia, and as such trustee for the use of the Protestant Episcopal Church in the Diocese of Georgia, and also trustee for St. Philips Parish (hereinafter called trustee) to purchase the following described property, to wit: Commencing on the Easterly side of Washington Street, at the point where the City Fire Department property corners with the church property on Washington street, running thence southerly on the eastern side of Washington street not less than twenty-four (24) feet, thence easterly on parallel lines to the property of the Georgia Railroad, so that the north line of the church property shall be a continuation of the north line at Waverly Place, the same being a strip not less than twenty-four (24) feet wide, nor more than twenty-seven (27) feet wide off the northerly end of the church property adjoining the Fire Department property, as may be needed by said railway company, and being part of land lot seventy-seven (77) in the fourteenth district of Fulton county, Georgia, on the following terms, covenants, and conditions, to wit: (1) The trustee to have the right to remove all that part of the chapel or Sunday-School building which stands on said strip of land. (2) The property so to be purchased to be used (in connection with other property owned or controlled by the railroad) for railroad purposes in a comprehensive plan for the freight terminals, substantially shown by a ground plan, blueprint of which is exhibited herewith; this plan contemplates the relocation of Waverly Place approximately ninety (90) feet south of its present location, so as to make its north projected line coincident with the south line of the strip of land hereinbefore described. (3) The price to be paid for said property to be eighteen thousand dollars ($18,000.00), which sum is to cover the value of the strip actually appropriated to railroad uses, and all easements and rights in the streets and sidewalks on which it abuts, and also all damages to the residue of said church lot resulting from the establishment and operation of

freight terminals as proposed and shown by said blue print. The consequential damages herein. referred to are not to include any damages or claim for damages to the residue of the property vested in the trustee and his successors, which may be caused by the construction of approaches to a viaduct over the tracks and yards of the railroads for the purpose of extending Washington street northward. All claims for any such damages shall be unprejudiced by. this deal and purchase. (4) Waverly Place 'as relocated' to be sixty (60) feet wide with ten (10) feet sidewalks on each side, the roadway to be paved with asphalt and the sidewalks paved and curbed as in the present street. The north boundary of said street shall be separated from the proposed railroad yards by masonry retaining wall surmounted with suitable iron guard railing fence. (5) The lots fronting on south side of Waverly Place as relocated are never to be used by said railroad or its successors or assigns for railroad purposes, either tracks, yards, or warehouses, so long as the trustee or his successors utilize the residue of said church property for church purposes. (6) The round house situated on the Georgia Railroad near said church property to be removed within one year from the vicinity of said property, as a part of the changes in said road yard. (7) The trustee to file proper petition to the superior court of Fulton county, praying for all necessary orders of the judge and chancellor of said court, to authorize him, as bishop and trustee as aforesaid, to execute fee-simple title deed conveying said property to said railroad company upon the payment of the sum offered; whereupon the trustee is to execute and deliver such deed and remove said building from the property conveyed. (8) Said sum of $18,000.00 to be paid by the railroad upon approval by its counsel of the title to said property and the proceedings authorizing said sale, and the making of said deed, and shall be made contemporaneously with the delivery of said deed. (9) The covenants and agreements herein stated to be incorporated in the deed to said property so as to run with the land sold. (10) This proposition on acceptance by the trustee to constitute a contract."

The plaintiff in writing accepted "the foregoing proposition, subject to the approval of the court," which was obtained. The plaintiff at the time of the execution of the contract was the owner of a piece of land in Atlanta, of which the strip described in the con-

tract was a part. The interest in the contract having been assigned by the railway company to the Louisville Property Company, the plaintiff, on April 7, 1904, conveyed to the latter company the land described in the contract, by deed recorded in the county records in a book and page mentioned, "which deed is hereby shown to the court." (The deed was not attached to the original petition.) By virtue of such deed the Louisville Property Company assumed and became bound for all the conditions of the contract above set out, which were incorporated in the deed; but the obligations of the railway company to the plaintiff still continued to exist, notwithstanding the liability of the property company also to perform them. The Atlanta, Knoxville & Northern Railway Company has been consolidated and merged with the Louisville & Nashville Railroad Company, and on account of the consolidation and merger the latter company "is liable for the covenants and obligations of said contract, and is now in possession of the land covered by said deed, has graded and laid its tracks on the same, thus making it a part of its terminal facilities in the City of Atlanta." It was a material inducement to the sale that the plaintiff's adjoining land should be benefited and developed thereby, and by such sale the plaintiff had a railroad frontage along the entire north side of his land adjoining the tracks of the Louisville & Nashville Railroad Company. All of the covenants provided for in the contract are a necessary part of the development of the plaintiff's land. The street called Waverly Place, "as relocated," is a necessary easement and way of access to the plaintiff's land, bordering upon the railroad track, and takes the place of the old Waverly Place in that respect. That part of the plaintiff's land bordering upon the railroad tracks is the most valuable part on account of the business advantages connected with its railroad frontage, and it is inaccessible from the other streets bounding the plaintiff's land. The land upon which Waverly Place was to be "relocated" according to the contract is the property of the defendant, the Louisville Property Company, which "said plaintiff is informed and believes has no beneficial interest in said property, but merely holds a legal title for the benefit of the defendant, Louisville & Nashville Railroad Company, and the said Louisville Property Company is substantially the same in interest with the Louisville & Nashville Railroad Company, has the same officers, and is

subject to the control of the Louisville & Nashville Railroad Company." The plaintiff can not be compensated in damages for the failure to "relocate" Waverly Place as covenanted in the contract, because damages would be impossible of computation, and the management of the plaintiff's property for the future is based upon this covenant and easement, and the sale of the land according to the contract was not only a part of the plan for freight terminals, but a part of the plan of the plaintiff for the future development of said property adjoining such terminals, and was part of the consideration moving the plaintiff to make the contract. A remedy by action for damages would be inadequate and impossible of computation. The prayer was that the three defendants should be decreed to specifically perform the contract, and "relocate" Waverly Place in the place and manner as covenanted to be done in such contract.

By amendment it was alleged that Waverly Place, as it existed when the contract was made, was a street about eighty feet wide, extending from Washington street to Central Avenue, a distance of about four hundred feet, and was the most direct way from the property of the plaintiff to the central part and business section of Atlanta, and was in constant use by the public; that it is now in possession and exclusive use of the defendants, in connection with their terminal facilities, and demand has been made upon each of the defendants to relocate the street as covenanted in the contract, but each of them has failed and refused to do so. It was prayed that defendants should be enjoined from further use of the land where Waverly Place was formerly located, until they should have performed and fulfilled their covenants set out in the contract in relation to the relocation and pavement of the street; and that plaintiff have such other relief as he might be entitled to. Attached to the amendment as an exhibit was a copy of the deed from the plaintiff to the Louisville Property Company, dated April 7, 1904. It recited the making of the contract by the plaintiff with the Atlanta, Knoxville & Northern Railway Company, set out in full the terms and covenants contained in it, the obtaining of an order of court allowing the sale in accordance with its terms, that the railway company had assigned its rights under such contract to the Louisville Property Company, and that the purchase-price had been paid. In the deed was contained this additional clause not contained in the contract: "Said conditions shall not be enforcible,

except as to removal of said round house, until the City of Atlanta allows exchange of streets, exchange of engine-house property, and other changes shown in the blueprint drawing of the proposed enlargement of certain terminals referred to in said proposal of February 20, 1904." The blueprint drawing was not attached to the original petition or to the amendment as contained in the record.

Objection was made to the allowance of the amendment. Before it was made, a demurrer to the petition was filed on the following grounds: (1) Because the petitioner expressly disclaims any effort to recover damages, and the allegations are insufficient to entitle him to the relief of specific performance. (2) Because the allegations show that the plaintiff can be compensated in damages for any alleged breach of contract on the part of the defendants or either of them. (3) Because it appears that the contract set out in the original petition, which was a proposition for the sale of property, had been fully executed and become merged into a deed of conveyance, the book and page of the record of which was stated, but the deed was not set forth nor attached as an exhibit, and the suit was therefore brought upon a contract which it appears was not at the time the suit was filed in force and effect, having been fully performed. (4) Because no cause of action was set out in the petition against the defendants or either of them. The demurrer was renewed after the making of the amendment, and was sustained on all of the grounds thereof, and the petition as amended was dismissed. The plaintiff excepted.

*Z. D. Harrison* and *C. L. Peltigrew,* for plaintiff.

*King & Spalding* and *Tye, Peeples & Jordan,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) The definitions of personal covenants and covenants running with land are not difficult, but sometimes it is a matter of no small difficulty to declare whether a particular covenant belongs to the one class or to the other. The difference in consequences between a covenant the obligation of which remains fixed upon particular contracting parties and one in which a conveyance of the land is accompanied by the obligation, is great. In the case before us a proposition was made for the purchase of land on certain stated "terms, covenants, and conditions." After stating them, it was added: "the covenants and agreements herein stated to be incorporated in the deed to said property, so as to run with the land sold." The

37

proposition was accepted. Both parties assumed that the covenants were of such a character that they could be made to run with the land sold, and agreed that this should be done. We deal with the case accordingly, without questioning the correctness of the assumption. If the deed had been made to the party contracting to purchase, and had included the covenants and agreements stated in the preliminary contract as running with the land, it would hardly be contended that such party would be bound both by the covenants in the preliminary contract, as personal, and also by the same covenants in the deed, as running with the land, at least unless such a purpose plainly appeared. Upon the making of such a deed containing these covenants, as the parties agreed, the preliminary contract would have been extinguished and merged into the deed. Nor is that result prevented because the proposed purchaser assigned his interest to another, and the deed containing the covenants was made to such assignee, which was alleged to be also the owner of the land on which Waverly Place was to be "relocated."

Was it the agreement of the parties that the terms of the preliminary contract of purchase should be binding upon each person who should succeed to the ownership of the land, pending the holding, as a covenant running with and resting upon the land sold, and also that the original purchaser should remain bound by the "terms, covenants and conditions" of the preliminary contract of purchase, regardless of who owned the land? Suppose that the adjacent land should pass by sale, private or public, into entirely different hands, was it the legal import of the contract that the Atlanta, Knoxville and Northern Railway Company should nevertheless enter on it, lay out a street, build walls, etc? We do not mean that cases may not exist where a personal contract binds one who is a party to it, although he has parted with his title, and his grantee or assignee takes cum onere, subject to the covenant, while he holds; but we do not think that the terms of the contract before us have that effect, or are sufficient to save the case from the general rule that terms of purchase are merged into the deed.

There are cases where a contract provided for the making of a deed and also contained some other separate and distinct collateral agreement by one or the other of the parties, and where the entire contract was held not to be merged in the deed. Instances of this kind will be found in Morris *v.* Whitcher, 20 N. Y. 41, and

Reid *v.* Sycks, 27 Ohio State, 285.　But these cases are different from one where the preliminary contract provides for its incorporation in its entirety into the deed, so as to make the covenants run with the land, and makes no provision for their being also personal.　How can covenants be termed collateral to a deed, which, in pursuance of an express agreement in the preliminary contract, are to be and are inserted in the deed?　The ground of extinguishment of the contract to convey by the making of the deed has been variously termed performance, satisfaction, or merger; but the result is practically the same.　On the general rule and exceptional cases see 13 Cyc. 616 et seq., and notes; Devlin on Deeds, 850 a, b; Clifton *v.* Jackson Iron Co., 74 Mich. 183 (41 N. W. 891, 16 Am. St. R. 621, and note) ; Davis *v.* Lee, 52 Wash. 230 (132 Am. St. R. 973, 100 Pac. 752) ; Colvin *v.* Schell, 1 Grant (Pa.), 225; Fuson *v.* Chestnut (Ky.), 109 S. W. 1192; Douglas *v.* Union Mut. Life Ins. Co., 127 Ill. 101 (20 N. E. 51) ; Oliver Refining Co. *v.* Portsmouth Cotton Oil Refining Co., 109 Va. 513 (64 S. E. 56).

It was contended that the Atlanta, Knoxville & Northern Railway Company could assign its rights under the preliminary contract, but could not assign its liabilities, and that its obligations remained of force.　The agreements in that contract were mutually binding upon the parties to it.　Certain things were set out as covenants and conditions of the purchase and sale of the land, and one of the agreements, binding on both, was that these covenants were to be written in the deed, "so as to run with the land."　When the deed was executed to the Louisville Property Company, which is alleged to have been the assignee of the interest of the railway company, those agreements and covenants were written into it, but there was also inserted a clause which very materially changed the right of enforcement of them, making such right contingent, instead of absolute.　It read: "Said conditions shall not be enforcible, except as to removal of the round house, until the City of Atlanta allows exchange of streets, exchange of engine-house property and other changes shown in the blueprint drawing of the proposed enlargement of railroad terminals referred to in said proposal of February 20, 1904."　There was no allegation that the City of Atlanta had allowed these changes, which allowance was thus made a condition precedent to the enforcement of the covenants included in the

preliminary contract and copied into the deed. Clearly, as against the Louisville Property Company, an effort to enforce the covenants, without alleging such allowance on the part of the city, must fail. If it were conceded that, as between the two parties who entered into the preliminary contract, the making of the deed to the assignee of the purchaser did not satisfy the contract as a whole, but only to a lesser extent, and that both parties were bound by it except to that extent, the provision of the deed on the subject of the covenants which were to be made to run with the land was different from the provision of the contract on that subject. If it should be suggested that it might be inferred that there was an agreed modification of the original terms in the respect mentioned, then this should enure to the benefit of the railway company also. If there was no such assent or agreement on the part of the latter company, the plaintiff would not be in a position to claim against it specific performance of the contract. If the preliminary contract is binding on the railway company as written, but not enforcible as against the Louisville Property Company, except upon another express condition, the two have been so segregated as to make their liability to suit stand upon different bases.

It is no sufficient answer to the want of any allegation on the subject of the allowance of the exchanges on the part of the city, to say that it was alleged that the Louisville & Nashville Railroad Company was in possession of the land sold and that Waverly Place, as it existed when the contract was made, was in the possession and exclusive use of the defendants, in connection with other terminal facilities, when the suit was brought. If the allegations that the Louisville & Nashville Railroad Company was the successor in interest of the Atlanta, Knoxville & Northern Railway Company and was in possession of the land covered by the contract, and that the Louisville Property Company held the legal title for the first-mentioned company, are to be taken as meaning that the Louisville & Nashville Railroad Company stands in the same position as the Louisville Property Company, then the above-mentioned provision inserted in the deed would enure to its benefit.

It was contended that the contract agreed to give to the plaintiff an easement of way, regardless of the public street. A person may have an easement, without reference to the rights of the public. But the contract here involved was not merely for an easement, but

included the abandonment of a public highway in a city and the opening of another in its stead, or, as it is called, "relocating" it. The contract and deed stated that the property purchased was to be used in connection with other property owned or controlled by the railway company, for railroad purposes, in a comprehensive plan for freight terminals, substantially shown by a ground plan, a blueprint of which "is exhibited herewith." No blueprint was set out in the record, and this general reference to some contemplated comprehensive plan was left to stand alone.

The presiding judge did not err in sustaining the demurrer and in dismissing the petition.

*Judgment affirmed on main bill of exceptions. Cross-bill dismissed. All the Justices concur, except Fish, C. J., absent.*