DECIDED FEBRUARY 20, 1942.  REHEARING DENIED MARCH 19, APRIL 1, 1942.

*A. H. Henderson, Boyd Sloan, Kelley & Brannon,* for plaintiffs in error.

*C. H. Edwards, Joseph G. Collins,* contra.

SUTTON, J.  V. C. Collins brought suit in two counts against R. L. Kytle, as executor under the will of Calvin Kytle, and individually, and against S. C. Moon and J. E. Davis, the petition as amended alleging in count 1 as follows: Previously to and on February 24, 1934, the defendant Kytle had in his control and for sale as executor under the will of Calvin Kytle, his father, a tract of land located in White County and known as the Calvin Kytle farm. The defendants, Kytle, Moon and Davis, mutually entered into some contract or arrangement by which Moon and Davis and Kytle were to survey, divide, and plat the said farm and advertise and sell the same at auction in parcels, and a percentage of the proceeds was to be paid to Moon and Davis, the division, advertising, plat and sale to be under the direction, control, and approval of Kytle as executor and individually as devisee and heir of his father.  Pursuant to said agreement the defendants pretended to survey the said farm into several tracts and to make a plat or blue print thereof, giving lines, courses, and distances and exact number of acres in each tract.  After the pretended survey was made the defendants advertised the sale of the land, and on February 24, 1934, made a sale of the land at auction by the acre.  In advertising and in the plat and on the day of sale the defendants represented to the plaintiff that tract No. 2 in the said survey contained 56.6 acres, and asked the plaintiff and others to bid on same by the acre, and it was knocked off to the plaintiff as the highest bidder at $16.75 per acre.  At the sale Moon and Davis represented to the plaintiff

and others that another tract known as tract No. 6 contained 70.2 acres of land, and asked the plaintiff and others to bid on the same by the acre, and the said tract was knocked off to the plaintiff as the highest bidder at $16.75 per acre. On the day of sale the plaintiff paid the said Kytle, Moon, and Davis for the two said tracts the sum of $2123.90, the full purchase price of 126.8 acres at $16.75 per acre, and thereupon the defendant Kytle conveyed the said two tracts to the plaintiff, again representing that they contained 126.8 acres. A copy of the deed was attached to the petition as exhibit A. and made a part thereof. The said tract No. 2 was knowingly and falsely represented by the defendants to contain 56.6 acres but in fact contained only 23.4 acres. The said tract No. 6 was knowingly and falsely represented by the defendants to contain 70.2 acres but it contained only 56.7 acres. Both tracts were knowingly and falsely represented by the defendants to contain 126.8 acres but in fact contained only 80.1 acres, 46.7 acres less than what the defendants knowingly and falsely represented them to contain. The plaintiff did not know the acreage of either of the tracts, and he believed and relied on the defendants' representations that each of said tracts contained the exact acreage represented by them, and the plaintiff acted on the said representations made by the defendants jointly and in a common scheme to induce the plaintiff to act thereon, to enlarge and enhance the proceeds of the sale of the property, and thereby to secure more money for each of the said defendants from the sale. The plaintiff would not have purchased the property and paid $16.75 per acre for 46.7 acres he was falsely represented to be getting, and believed he was getting but did not get, had it not been for the false representations of the defendants that each of the said tracts contained the acreage stated by them to be contained in each tract as aforesaid. Not knowing anything to the contrary, the plaintiff believed the defendants' representations to be true, and acted on them as true, and did not know that they were false until in March or later in 1937 when a true survey of his property was made by or at the request of the United States Government for soil-erosion work. After discovering the falsity of the representations, the plaintiff notified the defendants of the same, and requested payment to him of the sum he paid for the 46.7 acres which he did not get, but defendants have not paid the plaintiff the same or any part thereof. The defendants jointly and together

knowingly and falsely made said representations of acreage in each tract with the intention that the plaintiff should act thereon, and the plaintiff did act on said false representations, believing they were true, and was by said false representations defrauded of the sum of $782.23, being $16.75 per acre for the 46.7 acres short, and the plaintiff was defrauded thereof on February 24, 1934, and his damage at this time is $782.23 with interest at seven per cent. from the date of the sale and for which the suit is brought. The defendants jointly made the said false representations and jointly received and divided the proceeds of the said amount, and are jointly and severally liable to the plaintiff. Neither the defendant Kytle, Moon, Davis nor the distributees of the Calvin Kytle estate has any right or title to the $782.23 fraudulently procured from the plaintiff as above stated on the false representations that 126.8 acres of land were sold to the plaintiff, that the acreage was there, whereas it was not there, and the plaintiff got only 80.1 acres for his $2123.90.

The copy of deed attached to the petition as exhibit A shows a conveyance on February 24, 1934, by "R. L. Kytle Ex. of C. H. Kytle estate," of "the lot or parcel of land lying and being in the county and State aforesaid [White County, Georgia], and being all of tract No. 2 containing 56.6 acres and tract No. 6 containing 70.6 acres of the C. H. Kytle est. subdivision as shown by plat made by S. C. Moon and having meets [metes] and bounds as follows: [naming them]," to V. C. Collins. The deed recites that, pursuant to an order of the court of ordinary, etc., the sale of the land was made at public outcry, and that the "lots or parcels of land thus described" were bid off by Collins at the price of $2123.90, he being the highest and best bidder, and that in consideration of said sum in hand paid etc. the party of the first part has granted, bargained, sold, and conveyed etc., and does by such instrument grant, bargain, sell, and convey etc. "the said described land" etc. to the party of the second part, V. C. Collins.

Count 2 of the petition as amended alleged substantially the same facts as in count 1 except that, instead of alleging actual fraud on the part of the defendants, it was alleged that the representations made by the defendants were false and constituted legal fraud against the plaintiff even if made by mistake or innocently.

The court overruled general demurrers of the defendants to the

petition as amended and exceptions pendente lite were duly certified and filed. The defendants also filed answers setting up that they had acted in good faith in the surveying, platting, and sale of the property and denied liability.

The case proceeded to trial and the plaintiff testified substantially as follows: "I lived in Union County at the time of the sale. . . I never had lived in White County. In February, 1934, February 24, 1934, I came over on this side and bought this property down there at public outcry. My brother-in-law had written me about it, that the place was going to sell, so I had been on it a time or two a year or two before. Mr. Columbus Nix was my brother-in-law. He lived on the property. It had been surveyed, you see, and divided up in plats. As to what occurred the day of the sale—Mr. Kytle was there and Mr. Moon and Mr. Davis, that is, the defendants. . . The man who was crying the sale was some big fellow that had on a derby hat. He was a stranger to me. . . I asked them to put up these two tracts and sell them together and so they knocked it off for $16.75. They asked for bids by just running around asking you to bid on it. Mr. Moon over there was doing that. . . They had blue prints there and were handing out blue prints. . . I had one when I bid on the tracts. . . I did not know the person who was crying the sale. He was asking for bids by the acre. . . I bid by the acre. . . As to whether anything was said about selling either one of them by the tract or both of them by the tract—he was starting off the bid and the crowd was bidding. I bid on the acre all the way through. . . That was the way the crier of the sale wanted us to bid, and there were others bidding on the property by the acre. When my bid got to $16.75 per acre they knocked it off to me. . . After it was knocked off to me on my bid of $16.75 an acre they ascertained how much I was to pay over, arrived at the amount to put in the deed by multiplying the price per acre by the amount of acres, and the acres figured by the acres in this plat. That is the only way they could figure it and I paid that amount to Mr. Kytle. Mr. Kytle made me the deed we read here. . . I don't know anything about the contents of the two tracts I was buying, except I just kind of viewed over part of it. I was buying by the tract. I was going by the blue print for the acreage. . . I believed the blue print was true and bought it in good faith, thinking I had it. . . I sup-

pose Mr. Kytle was close enough to the man that was selling it to hear how the man was selling it. He was all around there by the rest of them. He was crying loud enough for them all to hear. At the time this deed was made I did not tell them anything about the acreage. I did not have anything to do with putting in there the acreage represented in the deed. That was made by them and signed by Mr. Kytle and delivered to me. . . The first time I had occasion to find out except what I did learn at the sale there and the blue prints what the acreage was in these two tracts I bought was in 1937, I believe, the spring of 1937. A Government man wanted to do some erosion work, I believe, a soil-erosion engineer. I checked up on this by a separate survey of my own. That was before I called on the defendants for a refund and after the soil-erosion survey. No refund was made whatever. During the year he [Columbus Nix] lived there before this sale I had visited him on occasions, once or twice, I suppose, I don't remember, I couldn't say positively. . . He was farming part of it, part that I bought. He wrote me and told me about the sale and I went to his house on the night before the sale and spent the night with him there. . . We did not go out together the next morning on the place and look at it. There wasn't anybody to keep me from going over the farm completely from one side to the other. I could have gone over it any time I wanted to all that day and I could have stayed off of it. Nobody done anything to prevent me from going over it. I did go over it as much as I wanted to. I came back and started bidding on the property. I don't remember that I had any conversation about the property before I entered a bid on the property. Mr. Kytle never did anything to get me to bid on the property. He never made any representations to me about the property. I never had any conversation with Mr. Moon or Mr. Davis either one about it either before I bid it off. I bought it then the next day. I went out to Mr. Kytle's house, that was in February, 1934, and paid the money and he gave me a deed, and I went into possession of the property through my brother-in-law as tenant that year and collected the rent off of it that year, and my brother-in-law continued to cultivate it during the year 1934, and in December, 1934, I moved on the farm and in 1935 I made a crop there myself, and in 1936 I made a crop there myself, and I was well pleased with my buy up until the time I found—I don't re-

member I told Mr. Kytle I was well pleased, and that I knew I had a good buy. That is what he claims. I was well pleased during the years 1934, 1935, and 1936, the date I went to tending it myself and collected rent off of it. I was well satisfied with the purchase of the property. Then in 1937 some soil-erosion man came by, and after he came there I began to get dissatisfied and had a survey made. . . As to whether I ever, as to whether I ever knew anything to indicate to me that Mr. Kytle entered into any conspiracy to defraud me of any money—I couldn't say about that. I took them to be honest and figured him to make fair with me. He is a man of good reputation and a man of good character. He never said anything to me to get me to bid on the farm, and he never done anything that I know of to induce me to buy. I don't know anything Mr. Kytle ever done towards misrepresenting the number of acres in those tracts. I don't know of anything, if there was a shortage, other than a mistake, of any wilful misrepresentations Mr. Kytle ever made to anybody about that land. I can't tell this jury anything that would indicate this was wilful fraud other than an honest mistake. I don't know of anything. . . I don't believe I talked with Mr. Kytle or Mr. Moon or Mr. Davis, prior to my purchase of this land, about the purchase of the land. I don't know of any fact that I haven't told the jury that would form the basis for the allegation, 'the defendants and together knowingly and falsely made representations of acreage on each tract, intending that petitioner would act on same, and petitioner did act on said false representations, believing they were true, and petitioner was by said false representations defrauded of the sum of $918.74.' [Amount was in fact by amendment changed to $783.23.] I have told the jury all that I know about it, and I don't know anything else that would form a basis for it. I did not mean in this suit to charge Mr. Kytle with getting together with Mr. Davis and Mr. Moon and entering into a fraudulent scheme to beat me out of $918 [$783.23]. I did not mean to allege that. . . I told Judge Sloan [of counsel for plaintiffs in error] that I did not have a conversation with either Mr. Kytle or Mr. Moon or Mr. Davis before the sale. They did not make any statement to me at all as I remember. They did not say anything to induce me to buy the property as I remember of. I was not to bid on it. I don't know of any getting together between Mr. Kytle and Mr.

Moon and Mr. Davis to cook up a fraudulent scheme of any kind to beat me. I don't know of any fraudulent scheme entered into between Mr. Moon and Mr. Davis. I don't mean they had a scheme to induce me to buy or to give me a shortage of acres, so far as I know. It could be, as far as I know, if there was a mistake in acreage as shown by the survey and plat I had, it could be an honest mistake. I don't know it wasn't an honest mistake. When me and Limp Nix, my brother-in-law, and Mr. Lewis looked over a part of this property we did not go over all of these two tracts. We didn't have a blue print when we were going over it. I did not know where the boundaries of these two tracts went to. These two tracts I bought, number 2 and 6, they were a part of a larger tract. They had the farm advertised for sale, 265 acres. This is the blue print they had there and sold the land by. I bought two tracts. . . I did not go over all of the two tracts I finally bought. I did not have the blue print. Nobody was with me and pointed out any lines of the property I bought. . . I did not have any information at all as to how many acres in the two except what they furnished me. I did not have any knowledge from observation or otherwise where these boundaries of these two lots I bid on went to or how much acreage there was in them before I bid on them. . . When I say Mr. Kytle never talked to me I mean he never talked to me personally about how much acreage there was, and Mr. Moon and Mr. Davis did not talk to me personally. I did not know the man who was crying the sale. It was advertised as the C. H. Kytle home place, I believe. Mr. Kytle was the executor. He was present during all of these representations about acreage where he could hear. He never objected or said that is not correct at any time. As to whether he did anything to show he disapproved of what was being said by Mr. Moon or Mr. Davis or anybody else—he seemed like he was well pleased, and when they asked for bids by the acre he did not say anything. When he was crying this off by the acre he did not say there is not much there. He nor Mr. Moon, Mr. Davis, or either one of them there at the sale that was being cried by the acre informed me or anybody else that the acreage down there was incorrect. No representations were made there by the auctioneer or whoever was selling the property as to how many acres or how many acres was being sold. The blue prints was all I had to go by. They just said

they were going to sell by the acre. They had the blue prints there and called my attention to it. Nothing was said by Mr. Kytle or Mr. Moon that we can't sell that way. Nothing was said that I remember of about what acreage I was buying and what acreage was being sold when I bid. . . None of them told me or anybody else that what was being said was not approved by them. . . In making the purchase as to the acreage I relied on it being an honest crowd and I bought it in good faith and according to the measurements and it wasn't there. That is just about the sum and substance of the whole thing. I did not know anything to the contrary of the blue prints being true at that time. I relied on that. As to the representations as to acreage—I don't know anything about it, whether it was intentionally or innocently made, but I did not know the facts myself at that time. I didn't go down there and look at this land the day before the sale. I think I looked at it the morning before the sale. I went out there for the purpose of looking at it. I was there with my brother-in-law who had been farming it and was then farming it the second year. . . He showed me generally where the boundaries were across the two tracts, and that was the morning before the sale. . . When I made my bid on this land I was relying on my judgment and I wasn't relying on anybody else. I did not know where all the boundaries were. It was on my judgment after that that I bought the land. I was relying on my judgment as to the quality of the land. When me and Mr. Nix went out there to look at this land we just crossed and saw the tracts and I did not see where they went this way. I could not tell from anything I had then or before the sale how many acres or approximately how many acres were in either one of the tracts. I did not even know where all of the corners were for all of these tracts when I bought it, and I told Mr. Nix to put stakes after I bought it. . . The boundaries of neither one of these tracts were ever pointed out to me before the sale all of the way through. They were partly, though. Maybe my brother-in-law showed me where they started off, but I couldn't see over the hill. I could have walked over the hill and saw the stakes if I had had time. If I had gone over the whole business I would not have had any way of telling how many acres were there. . . All I had to go by was this blue print, and that is what I went by."

Joe Davis testified for the plaintiff that Moon and he were engaged by Kytle and the heirs of the C. H. Kytle estate to survey, plat, and sell the land; that Homer Foster cried the sale; that they had a blue print, but that he did not remember whether the land was sold by the acre or by the tract.

There was introduced in evidence agreement between the parties to have a survey made, pending the suit, by a surveyor appointed by the court, the same to be binding between them as to the actual acreage contained in the land; the order of court appointing surveyor and providing for the finality of the survey; the report of the surveyor showing that lot No. 2 contained 23.4 acres and lot No. 6 contained 56.7 acres, the total of the two tracts being 80.1 acres; a deed from R. L. Kytle, as executor of the estate of C. H. Kytle, deceased, to V. C. Collins, dated February 24, 1934, containing the description of land and recitals hereinbefore set out; a blue print of "Land of C. H. Kytle estate being in district 426 G. M. and about four (4) M S of Cleveland, Georgia, in White County, Georgia. Lee Kytle, executor of said estate. Scale 1" equals 300', February, 1934. S. C. Moon, C. S., Hall County, Georgia. 411.2 acres," the said blue print showing tract No. 2 contained 56.6 acres and tract No. 6 contained 70.2 acres, and the total acreage in both tracts to be 126.8 acres. There was also introduced in evidence certified copy of the will of C. H. Kytle, showing that R. L. Kytle was named executor, and that he was given a legacy of $1500 under the will and was a child of C. H. Kytle, and that as executor he had full authority under the will to sell any and all real estate of the estate of C. H. Kytle at either public or private sale.

The defendants offered no evidence. The jury returned a verdict in favor of the plaintiff for $788.92 and costs, and judgment was entered accordingly, together with interest at 7 per cent. per annum from date on the principal sum. The defendants filed a motion for new trial, and by amendment added several special grounds. The court overruled the motion, and the exception here is to that judgment, and error is also assigned on the judgment of the court overruling the demurrers.

■ While the petition as amended proceeds against R. L. Kytle both in his capacity as executor and individually, jointly with S. C. Moon and J. E. Davis, as defendants, the defendant in error states in his brief that as to Kytle recovery is sought against him only in

his individual capacity; and accordingly in the consideration of the assignment of error on the judgment overruling the general demurrer it will be so dealt with. It is alleged in count 1 that in the sale of certain land the defendants knowingly and falsely represented to the plaintiff that the two tracts contained 56.6 acres and 70.2 acres, respectively, and that in fact they were found to contain only 23.4 acres and 56.7 acres, respectively, a shortage of 46.7 acres, and that in consequence the defendants received $782.23 more than they were entitled to at an agreed price of $16.75 per acre. It was further alleged that the defendants united in a common scheme to induce the plaintiff to act on such fraudulent representations, and to that end pretended to survey the said land into several tracts and to make a plat or blue print thereof, giving lines, courses, distances, and exact number of acres in each tract, advertising the land and making a sale by auction on February 24, 1934, in the advertising and sale making the false representations; that the plaintiff did act on such representations, believing them to be true, and that he did not know the acreage of either tract and would not have bought the property except for the fraudulent representations upon which he relied as true, and that he was damaged in the sum sued for as an apportionment.

Code § 29-201 provides: "In a sale of lands, if the purchase is per acre, a deficiency in the number of acres may be apportioned in the price. If the sale is by the tract or entire body, a deficiency in the quantity sold can not be apportioned. If the quantity is specified as 'more or less,' this qualification will cover any deficiency not so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud; in this event the deficiency is apportionable; the purchaser may demand a rescission of the sale or an apportionment of the price according to relative value." The defendant in error contends that the sale is shown to have been made by the acre, and that, although actual fraud is alleged in count 1 and legal fraud in count 2, such particular allegations are really not material to the issue, and a cause of action is set out in each count because a shortage is shown as against the acres purchased. The plaintiffs in error contend that the sale is shown to have been sold by the tract, and that in count 1 the prerequisite of actual fraud is not set forth, and in count 2 only legal fraud is charged, and that consequently no cause of action is made to appear in either count.

All preliminary negotiations must be said to have been merged in the deed which was accepted by the purchaser, and whether the sale was made by the acre or by the tract must be determined from an examination of such instrument. *Nelson* v. *A., K. & N. Railway Co.*, 135 *Ga.* 572 (69 S. E. 1118); *Loftis* v. *Clay*, 164 *Ga.* 845, 848 (139 S. E. 668); *Keiley* v. *Citizens Savings Bank & Trust Co.*, 173 *Ga.* 11 (159 S. E. 527); *Taylor* v. *Board of Glenlock Public School*, 185 *Ga.* 61 (194 S. E. 169). The copy of the deed attached to the petition recites a conveyance of "the lot or tract of land lying and being in the county and State aforesaid, and being all of tract No. 2 containing 56.6 acres and tract No. 6 containing 70.6 acres of the C. H. Kytle est. Subdivision as shown by plat made by S. C. Moon and having meets [metes] and bounds as follows [naming them]." Such a sale is by the tract and not by the acre, the specification of the number of acres being only words of description, and to authorize an apportionment for a shortage of acreage actual fraud must be shown. *Longino* v. *Latham*, 93 *Ga.* 274 (20 S. E. 308); *Kendall* v. *Wells*, 126 *Ga.* 343 (55 S. E. 41); *Rawlings* v. *Cohen*, 143 *Ga.* 726 (85 S. E. 851); *Keiley* v. *Citizens Bank & Trust Co.*, supra; *Appleby* v. *Tomlinson*, 31 *Ga. App.* 771 (122 S. E. 93). Legal fraud is not sufficient. See especially *Finney* v. *Morris*, 116 *Ga.* 758 (42 S. E. 1020). Where, however, a deed is so worded as to show that the number of acres is made the essence of the contract it will be taken as evidencing a sale by the acre and not by the tract. The rule is stated in *Roberts* v. *Groover*, 156 *Ga.* 386 (2) (119 S. E. 696): "The proper solution of the question whether a sale of land is by the tract or by the acre depends upon whether the quantity of land is of the essence of the contract. If, after a description of a tract of land which otherwise identifies the premises either by metes and bounds or by monuments, there appears a statement of the quantity of the land as so many acres more or less, such a sale would be a sale by the tract; but where in a conveyance the usual reference to the land as 'all that tract or parcel of land,' etc., or 'a tract of land,' is omitted and the first statement as to the land is a covenant to sell a definite and exact number of acres of land, neither more nor less, the description thereafter following not stating any metes or bounds, it must be adjudged that the quantity of land being first mentioned in the bond for title is of the essence of the contract." Of course, in a sale by the

number of acres, and not by the tract, the question of fraud is immaterial to recovery. Code, § 29-201. The present petition as amended, properly construed, showed a sale by the tract, but actual fraud was specifically alleged against the defendants in count 1. The court did not err in overruling the general demurrers as to that count, but, as count 2 alleged only constructive or legal fraud, the court erred in overruling the general demurrers as to it.

■ The evidence showed a shortage of 46.7 acres as against the acreage which the plaintiff testified the land was represented by a blue print to contain. He testified, however, that although he did not get what the blue print called for *in acres* he did not mean to charge that the defendants entered into any scheme, as charged in the petition, to fraudulently mislead him, or that in fact they personally made any representations whatever as to the acreage either before or at the sale. He was not prevented from going over the land. He went over it as much as he wanted to and could have gone completely over it on the day of the sale. No actual boundaries were pointed out on the land by the defendants under any pretense of actual knowledge. The case is plainly one in which land was sold at auction and a blue print was handed to the plaintiff showing stated acreage and boundaries. He testified that he bid by the acre, but, as hereinbefore shown, all preliminary negotiations became merged in the written deed which he accepted. He made no effort to have it reformed, when it was executed on February, 1934, to show a conveyance by acres instead of a tract. He sought no rescission on the ground of fraud, but entered into possession. In 1937 he brought the present suit for apportionment, which in the absence of actual fraud can not be had in the sale of land by the tract. The statement of 126.8 acres in the blue print was error. There were actually only 80.1 acres. But the mistake could have been honest and unintentional. The plaintiff in effect so concedes. As stated in *Finney* v. *Morris,* supra, "The disclaimer of the defendant [who was sued on a note given in part payment of land] of any purpose to charge the plaintiff with intentional fraud in the sale of the land amounted to an admission that there was no such fraud, and that, therefore, the plaintiff acted in good faith," and, as further said, "admitted himself out of court." The evidence did not support the allegations of actual fraud in a sale of land by the tract. The verdict and judgment in favor of the plaintiff were

not authorized, and the trial court erred in overruling the general grounds of the defendants' motion for new trial.

The motion for new trial contains several special grounds, but in view of the rulings in the foregoing opinion it is not likely that the alleged errors complained of will occur on another trial of the case, and, consequently, it is deemed unnecessary to rule on the special grounds.

*Judgment reversed. Stephens, P. J., concurs in the rulings on the demurrers, but dissents from the ruling that the court erred in overruling the motion for new trial. Felton, J., concurs in the ruling on the demurrer as to count 1 and in the ruling that the court erred in overruling the motion for new trial, but dissents from the ruling on the demurrer to count 2.*

FELTON, J., concurring in part and dissenting in part. By amendment the plaintiff sought to recover of the defendant Kytle in his capacity as executor. The court in its charge eliminated the issue as to the liability of the executor. The jury found against the defendants as individuals. There was no exception to the charge of the court exonerating the executor. Under the rulings in *Penn Mutual Life Insurance Co.* v. *Taggart,* 38 *Ga. App.* 509 (144 S. E. 400), no affirmative action would lie against the individual defendants for an alleged fraud not involving conscious moral guilt. The only authority I have been able to find which seems to authorize an affirmative action based on legal fraud is Code § 29-201, and it seems to authorize such an action against a vendor. Since the individual defendants in this case were not vendors and there was no evidence of conscious moral guilt, the verdict against the individual defendants was unauthorized.

In my opinion the second count set forth a cause of action against Kytle, as executor, and the court did not err in overruling the general demurrer to the same. The Code, § 29-201, seems to mean that when land is sold by the acre there is a warranty of acreage. Obviously the section refers only to vendors who have authority under law to make a warranty, and therefore not to executors and administrators; that is, the section refers to such vendors as respects warranties. *McKinnon* v. *Sheffield,* 149 *Ga.* 219 (99 S. E. 855). It seems to follow that whatever affirmative actions are authorized by the section against representatives must be based on fraud, or mistake amounting to fraud, and that it is therefore immaterial

whether the land in this case was sold by the acre or by the tract. It seems to be well settled that the Code section authorizes an affirmative action against the representative of an estate for actual fraud. The decision in *Folsom* v. *Howell*, 94 *Ga.* 112 (21 S. E. 136), is, in my opinion, authority for the proposition that an action lies against the representative of an estate for legal fraud. It is true that there were representations in that case in addition to the kind we have in the instant case, but the principle involved is the same whatever the nature of the misrepresentations as to quantity. In the case just cited there was a prayer for a reformation of the deed, but such a prayer was not necessary to the grant of relief for fraud. It would have done no good to reform a sale into a sale by the acre rather than by the tract, when the injured party would be entitled to the same relief in either case, since the rule of apportioning acreage sold by the representative of an estate is essentially different from the rule when applied to an ordinary vendor in the respect we have pointed out. *Folsom* v. *Howell*, supra, so far as we have been able to find, is the oldest case in which the question under discussion was raised and decided. There are a good many older cases in which it is stated or intimated that there can be no action for legal fraud, but in none of them was such a ruling called for by the facts or pleadings. In *Beall* v. *Berkhalter*, 26 *Ga.* 564, there was no claim of fraud of any kind. Since the decision in that case the provision with reference to "mistake amounting to fraud" has been inserted in our Codes and now appears in section 29-201. The statement in *Walton* v. *Ramsey*, 50 *Ga.* 618, to the effect that the above Code section did not introduce a new element of actionable fraud is obiter dictum, because there was no contention in that case that there was actual fraud or mistake amounting to fraud. Since I regard the ruling in that case as obiter on the question here, it may be that I would be justified in calling attention to another statement which seems to be out of line with later decisions. The court stated that the deficiency of land had to be so gross as to be evidence of actual fraud. Under the Code section it is hard to understand how a deficiency can be due to mistake and fraud at the same time. I can't see how a mistake could be evidence of fraud. Judge Lumpkin stated in *Kendall* v. *Wells*, 126 *Ga.* 343, 352 (supra): "But for previous rulings, it might be argued with force that the Code did make a change." Judge Fish made a similar state-

ment in *Finney* v. *Morris*, 116 *Ga.* 760 (supra). In my opinion the decision in *Esles* v. *Odom*, 91 *Ga.* 600 (18 S. E. 355), supports rather than weakens the ruling in *Folsom* v. *Howell*, supra. In view of the controlling authority of the older case in point I think the court correctly overruled the demurrer to the second count of the petition.

STEPHENS, P. J., dissenting. I am of the opinion that a cause of action was alleged in count 1 of the petition, and that this count was sustained by the evidence. I dissent from the judgment of reversal wherein it is based on the ground that the evidence did not support the verdict. I concur in the conclusion that count 2 did not set out a cause of action.

### ON MOTION FOR REHEARING.

SUTTON, J. It appears from the record that R. L. Kytle, as executor of his father's estate, "entered into some contract or arrangement" with S. C. Moon and J. E. Davis to survey, plat, and sell for him certain lands belonging to his father's estate. Moon and Davis surveyed and divided the land into tracts and made a blue print thereof, and sold at public auction tract 2, which the blue print showed contained 56.6 acres, and tract 6, which the blue print showed contained 70.2 acres, to A. C. Collins, he being the highest bidder.

The defendant in error in his motion for rehearing still earnestly contends that the sale was by the acre, because bids by the acre were invited at the sale and he so bid, and the land was knocked off to him at $16.75 per acre, and he paid that price for the number of acres as shown by the blue print, and, therefore, is entitled to recover for the alleged deficiency in the land at the price of $16.75 per acre.

The Code, § 96-114, provides: "In case of sales by auction, the auctioneer shall be considered agent of both parties, so far as to dispense with any further memorandum in writing than his own entries." The record does not disclose that any memorandum of sale was made by the auctioneer or auction company, but after the land was bid off by Collins he went to the home of R. L. Kytle, and he, as executor of the estate of Calvin Kytle, made a deed to Collins to tracts 2 and 6 as containing 126.8 acres, the said tracts being described in the deed as shown by the above statement of facts. We think this deed shows a sale of land by the tract as pointed

out in the above opinion in this case, and that, under the facts as disclosed by the record, parol evidence, to the effect that the land was offered for sale and was bid off by the purchaser at a named price per acre, is incompetent and insufficient to show that the sale was by the acre. *Turner* v. *Rives,* 75 *Ga.* 606; *Walker* v. *Bryant,* 112 *Ga.* 412 (5), 417 (37 S. E. 749); *Roberts* v. *Investors Savings Co.,* 154 *Ga.* 45 (5) (113 S. E. 398); *Taylor* v. *Fowler,* 155 *Ga.* 654 (118 S. E. 212); *Blaylock* v. *Hackel,* 164 *Ga.* 257 (138 S. E. 333); *Stonecypher* v. *Georgia Power Co.,* 183 *Ga.* 498 (189 S. E. 13). The deed represents the final contract of sale between the parties, and in the absence of actual fraud, as in the present case, and where there is no proceeding seeking rescission or reformation of the deed, all previous transactions between the parties in connection with the sale are merged in the deed. This suit is not a proceeding for rescission or reformation of the deed but is one, based on fraud, for recovery of an alleged deficiency of land under a sale which the deed shows to have been made by the tract, and where the evidence fails to show any intentional or actual fraud.

Furthermore, mere testimony that the land was offered for sale by the acre and was so bid off by the purchaser, without also a showing that the auctioneer, as agent of both parties, made a memorandum of such a sale, or that the parties themselves signed such a memorandum, would not evidence a sale by the acre. In *Lummus Real Estate Auction Co.* v. *Brown,* 49 *Ga. App.* 592 (176 S. E. 693), it was held: "Although an auctioneer in selling land may act as the agent of the owner, no contract of sale arises between the owner and a successful bidder, in the absence of a memorandum of the contract of sale, made by the auctioneer, who is the agent for both parties for that purpose. Civil Code (1910), § 4107 [Code of 1933, § 96-114]. Where no memorandum is made by the auctioneer, and there appears on his auction book only the signature of the successful bidder, there has arisen no contract of sale between the successful bidder and the owner." So, in the kind of a proceeding as here presented, in the absence of intentional or actual fraud, where the deed between the parties shows a sale by the tract, there can be no recovery by the purchaser for a deficiency in the land.

*Rehearing denied. Stephens, P. J., and Felton, J., concur in the denial of a rehearing, but adhere to the views expressed by them as above.*