## LOFTIS *et al. v.* CLAY.

1. The court did not err in striking the answers of the defendants Loftis and the Griffin Investment Company.
2. After the answers of the defendants had been stricken, the court did not err in directing a verdict in favor of the plaintiff, and in entering a decree thereon. Under the provisions of section 5652 of the Civil Code of 1910, it was unnecessary to introduce any evidence in the present case, since the court had stricken the answers of the defendants, and they did not offer any other or further defense by way of plea or answer.

No. 5580. SEPTEMBER 23, 1927.

Equitable petition. Before Judge Humphries. Fulton superior court. June 24, 1926.

*McElreath & Scott,* for plaintiffs in error.

*Bryan & Middlebrooks* and *John A. Dunaway,* contra.

RUSSELL, C. J. Clay filed suit against W. S. Loftis and the Griffin Investment Company, praying that Loftis be required to specifically perform the terms of a certain contract, and that the Griffin Investment Company be required to surrender and cancel a deed to secure debt, and, in the event that Loftis should not be able to perform his contract, that petitioner have judgment against him for $3000. On September 25, 1925, the defendants filed their answers to the petition. The plaintiff demurred to the answer of Loftis, and made a motion to strike the answer of the Griffin Investment Company. Upon a hearing the trial judge struck the answers of both defendants, and they tendered exceptions pendente lite. On June 24, 1926, the judge directed a verdict in favor of

Deeds, 18 C. J. p. 270, n. 76.

Principal and Surety, 32 Cyc. p. 153, n. 74.

Trial, 38 Cyc. p. 732, n. 73; p. 1565, n. 83; p. 1566, n. 88; p. 1574, n. 21; p. 1575, n. 23.

Vendor and Purchaser, 39 Cyc. p. 1524, n. 94; p. 1526, n. 99.

the plaintiff, and a decree was entered thereon. To the striking of the answers and to the direction of the verdict the plaintiffs excepted. Error was specially assigned upon the ground "that the court directed said verdict and rendered said judgment upon the pleadings as they stood after having stricken said answer, the petition not being verified by affidavit, and no evidence being introduced in proof of the allegations therein."

The case made by the plaintiff rested upon the following alleged facts: Clay and Loftis had entered into a written contract by which Clay agreed to sell Loftis 300 acres of land (located as described in the petition) for $12,500. This price was to be paid, $25 on the signing of the contract, $4775 on the delivery of a deed, and the balance of $7700 was to be paid by the purchaser assuming a loan of that amount secured by a loan deed covering the property conveyed to Loftis by Clay, and also another tract of 45 acres as described in the petition, which was not sold to Loftis by Clay. The two payments aggregating $4800 were duly made in cash, and the petitioner thereupon executed his warranty deed pursuant to the terms of said contract, and Loftis went into possession of the property "included in his deed." When the loan of $7700 fell due, Loftis only made a partial payment, and failed to pay the balance of the loan as he had agreed and undertaken to do in the alleged contract, but instead procured the Griffin Investment Company to pay off the loan for him and take a transfer of the note and deed from the Phœnix Mutual Life Insurance Company, the original creditor of Clay and the grantee in the security deed originally executed by Clay. Loftis paid to the Griffin Investment Company all of said loan except $3000, and had said company to execute to him its quitclaim deed to all the land described in said deed to secure debt, which Loftis had bought from Clay, thus releasing it from the lien of the deed to secure debt, but allowing the lien of said deed to remain as against the 45 acres owned by Clay which had originally been included in said deed to secure debt. Loftis now claims that the sum of $3000 is still due on said loan, and that said debt is a lien only against the 45 acres of petitioner, and refuses to comply with his contract and pay the balance of the consideration for the land, asserting that he has paid the amount due against the land he purchased; and the Griffin Investment Company, acting only for and in behalf of

the said Loftis and at his instance, declines to cancel the said deed to secure debt now held by it. The petition prayed that Loftis be required to specifically perform his contract and complete the payment of the entire $7700 loan; that the Griffin Investment Company be required to surrender and cancel its deed to secure debt; and, if it be not within the power of Loftis to specifically perform his contract, that petitioner have judgment for $3000, with interest as damages. By the striking of the answers of the defendants and the direction of a verdict against them the trial resulted in the plaintiff securing all the relief for which he prayed. It will be observed that the correctness of the court's ruling upon the answers of the defendants is challenged and questioned, but it will also be noted that neither defendant demurred to the petition. Two questions are raised by the record. Did the court err in striking the answers of the defendants; and was it error, after having stricken the answers, to direct a verdict without any evidence in a case in which the petition of the plaintiff was not verified?

1. We shall first consider the answer of Loftis. The answer is indefinite and evasive. It admits the execution of the contract set forth in the petition, but asserts that the contract covered all the property embraced in the loan deed to the Phœnix Mutual Life Insurance Company, and states that at the time the trade was consummated and the deed executed to him the plaintiff insisted on eliminating from said deed 32.3 acres of land on the north side of the Columbus public road, included in the loan deed, and asserts that "defendant accepted said deed, but did not, in view of such omission from said deed, assume said loan of $7700." The remainder of the answer admits that the Griffin Investment Company is claiming a balance of $3000, and avers that the defendant is not under any obligation to pay this balance, "for the reasons above set out;" that "he has fully complied with his contract;" and he denies that the Griffin Investment Company is acting for him. The answer is verified by the affidavit of the defendant. We think it plain that this answer presented no defense to the petition, and was properly stricken upon demurrer. Having admitted the acceptance of the deed from which the 32.3 or 45 acres (the amount being immaterial under the facts of this case) were excepted, in which deed the plaintiff alleged was an assumption of

the $7700 indebtedness, the statement by the defendant that he did not assume said loan is an assertion directly contrary to the effect which the law gives to the acceptance of the deed. The acceptance of the deed containing an assumption of the $7700 loan bound the defendant for the payment thereof (*Union City Realty & Trust Co.* v. *Wright,* 138 *Ga.* 703, 76 S. E. 35), and the question raised as to the terms of the contract of purchase and sale was immaterial to the issue, because the antecedent contract was merged in the subsequent deed and became functus officio when the deed was executed, and the rights of the parties are based alone upon the terms of the deed. *Nelson* v. *A., K. & N. Railway Co.,* 135 *Ga.* 572 (69 S. E. 1118); *Augusta Land Co.* v. *Augusta Ry. &c. Co.,* 140 *Ga.* 519, 525 (79 S. E. 138); *Chamlee* v. *Alverson,* 145 *Ga.* 637, 639 (89 ,S. E. 719). See also 2 Devlin on Real Estate, 1570, § 850a. "And," as said in 27 R. C. L. 529, § 260, "where an executory contract is carried out by a conveyance which is accepted by the purchaser, this, in the absence of fraud, accident, or mistake, operates as a discharge of the executory contract and regulates the rights and liabilities of the parties; and if the deed is tendered by the vendor as a full performance of the contract, it is immaterial that the purchaser protested against accepting it as such. This is so though the deed thus accepted varies from that stipulated for in the contract." Further discussion of this point is unnecessary here, for the doctrine of merger is elaborately discussed in the *Nelson* and *Augusta Land Co.* cases, supra.

The denial of the allegation of the petition that the Griffin Investment Company was acting for and in behalf of Loftis is immaterial to the issue, because this question could have no bearing upon the rights of Loftis as between him and the plaintiff. And the assertion that the defendant had fully complied with his contract is not only a mere conclusion, and as such subject to the demurrer based upon that ground, but is also contrary to the legal result following from the facts admitted by the defendant. As above stated, the court properly sustained the demurrer and dismissed the answer of Loftis; for while it is true, as argued in the brief of the plaintiffs in error, that no copy of the deed accepted by Loftis was attached to the petition or set forth therein, there was no demurrer attacking this omission; and as the petition did allege that the consideration as expressed in the contract

was also named in the deed which was accepted by Loftis, which allegation was not controverted, it follows that the averment of Loftis that he did not assume the payment of the $7700 debt would not be permitted.

We think the trial judge correctly sustained the oral motion of the plaintiff to strike the answer of the Griffin Investment Company, predicated upon the ground that it set out no defense to the petition. The Griffin Investment Company alleged that it knew nothing about the trade between Loftis and Clay. It admitted that it paid off the loan of the Phœnix Mutual Life Insurance Company and obtained from it a quitclaim deed conveying the property conveyed by Clay as security for the $7700 loan, together with a transfer of Clay's note. But it also admitted that it executed a quitclaim deed to Loftis to one of the tracts covered by Clay's deed, upon the payment of the balance of the $7700 loan, except $3000; and admitted that this balance was held against the acreage on the north side of the Columbus public road. These statements present no defense to the action; and the remaining averments, to the effect that the Griffin Investment Company was not acting for Loftis, and that it was ready and willing at any time to cancel said loan deed upon the payment of the balance of $3000, are immaterial and irrelevant to the issue. When Clay, in consideration of the loan of $7700, executed a negotiable note to the Phœnix Mutual Life Insurance Company, and as collateral security for the payment of this debt executed and delivered to the Phœnix Company a deed to two certain described tracts of land, the effect was to create an entire contract by the terms of which certain rights fixed by law inhered in each of the contracting parties. The Phœnix Company could not transfer to the Griffin Investment Company any more or further rights than those appertaining to the original creditor. It could legally transfer all its rights to the Griffin Investment Company. Therefore the question presented is, what would be the rights of the Phœnix Company had it released by quitclaim deed one of the two tracts of land conveyed as collateral security for an entire debt? Can one party to an entire contract alter such contract so as to make it divisible, without the consent of the opposite contracting party? We think not. In our opinion the destruction or amendment of a contract which requires the concurrence of two parties upon the same thing

54

in the same sense can not be accomplished by the act of only one of the contracting parties. In passing title to the two tracts of land to the Phœnix Company as security for a fixed indebtedness, the maker of the note, who was also the grantor in the deed, did not confer upon the grantee the right to dispose of one part of the collateral at one time and another part at another time, nor give the grantee the power to appraise the respective value of either of the two parcels of land. A creditor may insist upon the performance of every stipulation contained in the note which evidences the debt or the contract which is given to secure it, even to the pound of flesh; but he can not make for the debtor a new contract without the consent of the latter. We are of the opinion, therefore, that since the Griffin Investment Company obtained, by the transfer of the note and security from the Phœnix Company, no more rights nor any better standing than the latter would have had, it was beyond the power of the Griffin Investment Company to intermeddle with the collateral and change its status from that originally agreed upon between Clay and the Phœnix Company, and to proceed to release one of the tracts to a person other than the original debtor, without assuming all the risk and chances of loss to itself flowing from such release. By this release Clay was exposed to loss, provided that the larger tract released was worth more than the price received by the transferee creditor, or in case the smaller tract was worth less than the amount for which it was sought to hold Clay liable.

The conveyance of title to two tracts of land to secure a debt, when the amount of the debt is fixed and the value of the property as a whole for purposes of security has been appraised and agreed upon between the original creditor and the debtor, does not give either the original creditor or his transferee the right to make a new appraisal of the property. Especially does it preclude the right to appraise the value of the separate tracts as such, without the consent of the debtor, when the original agreed appraisal between the parties to the contract had been determined by the valuation of the property pledged as security as a whole. It is well settled that any act of the creditor which injures the surety or increases his risk, or exposes him to greater liability will discharge the latter. Civil Code (1910), § 3544. Under a similar principle, we think it clear that where a debtor to secure a debt

deposits more than one piece of property, whether personal or real, as security in gross for an entire debt, the amount of which is definitely fixed in the contract, it is not within the power of the holder of such collateral, whether he be the original creditor or a transferee, to split the debt so as to make it the liability of two persons instead of one, and to be paid in full as to a portion of the original amount, with a provision that it shall still retain vigor as to the other debtor, the amount apportioned in each instance being determined by the creditor without the concurrence of the original debtor. So we do not think that the Griffin Investment Company could treat the debt of $7700 secured by two tracts of land as two debts, the one of $4700 and the other of $3000, without such an alteration of the original note and deed as would absolutely require the agreement of Clay to the change. In the absence of any showing that there was specific authority to that effect, we do not think that the Griffin Investment Company could determine for itself that the tract of land containing 300 acres was intended as security for only $4700, and that the lien for the remaining $3000 could be detached from the larger tract and imposed solely upon the smaller tract of land, without the consent of Clay. If such were the case, the creditor in any instance where the debtor transferred collateral as security for his indebtedness, and particularly in the case of chattel security, would be the agent of the debtor clothed with unlimited authority. The effect of the action of the Griffin Investment Company in attempting to intermeddle and vary the original contract in this case was altogether to release Clay from liability to make any further payment upon the obligation, and entitled him to a decree providing for a cancellation of the deed given to secure his debt. This will put the legal title to the smaller tract of land into Clay, and complete the work which the Griffin Investment Company initiated when without warrant or authority it released a portion of the security without any regard to the rights of the debtor. This is the result and effect of the decree in this case.

2. It is contended that the verdict is unsupported by any evidence, in view of the fact that no testimony was introduced, and that the petition was not verified. Under the provisions of section 5652 of the Civil Code it was unnecessary to introduce any evidence in the present case, since the court had stricken the an-

swers of the defendants, and they did not offer any other or further defense by way of plea or answer. There was therefore "no defense made by the party sued, either in person or by attorney, at the time the case was submitted" to the jury, and the plaintiff was "permitted to take a verdict as if each and every item and paragraph [of the petition] were proved by testimony." In the circumstances it was immaterial that the petition was not verified. There was no demurrer based upon that ground. The defect due to the failure to verify was amendable. By failure to object to the lack of verification the defendants waived this defect, and by reason of this waiver the petition came as effectually within the provisions of section 5652 as if it had been properly verified. As to the rendition of a verdict against a defendant where there is no answer, even though no testimony whatever be introduced, see *Methodist Episcopal Church South* v. *Dudley Sash etc. Co.*, 137 *Ga.* 68 (4) (72 S. E. 480); *Brown* v. *Hammond*, 160 *Ga.* 446 (128 S. E. 66).

*Judgment affirmed. All the Justices concur, except Hill, J., absent.*