KEILEY *v.* CITIZENS SAVINGS BANK & TRUST CO.

No. 8334. JUNE 11, 1931. REHEARING DENIED JULY 18, 1931.

*W. A. McClain, B. C. Broyles,* and *Watkins, Asbill & Watkins,* for plaintiff in error.

*Randolph & Woodruff* and *Miles W. Lewis,* contra.

GILBERT, J. Keiley bought from Citizens Savings Bank & Trust Company five parcels of real estate, two tracts in Greene County,

two in the State of Florida, and the other in the City of Atlanta. Keiley executed to the Trust Company a promissory note for $5000, payable five years after its date, carrying a provision that if any one of the annual installments of interest should "not be promptly paid when due" the holder might declare the whole amount to be due, and the usual provision for the payment of attorney's fees. This note was secured by deed conveying the land situated in Greene County, containing provision for acceleration of the whole debt in the event the maker should not promptly pay taxes. Attachment was instituted by the Trust Company, duly followed by the filing of a declaration alleging failure to pay the 1929 taxes and the interest installment due April 1, 1929, the giving of notice for the collection of attorney's fees, and that Keiley resided at Washington, D. C. Attachment was levied upon the land in Greene County. The prayer was for judgment for the amount of the debt, interest, attorney's fees, and costs, and for a special lien on the land.

Keiley filed an answer, which was twice amended. Attached to the answer was an executory sales contract signed by both parties, and a deed subsequently dated effectuating the agreement. As to the parcels situated in Florida the contract mentioned recites: "892 acres, more or less, formerly known as the K. R. White property, situate at or near the town of Madison, Florida, same being situated most specifically about three miles easterly from Lovett, Fla., which is the nearest railroad station on the South Georgia Railroad and is 14 miles northwesterly from Madison, Fla. This property has one or two residence dwellings, together with about six tenant houses with corresponding number of barns and other buildings. *The exact number of these are unknown at the present time.* [Italics ours.] Property formerly known as the H. E. Beatty land. This tract is likewise near Madison, Fla., but situated in Jasper, Hamilton County, Fla., being four miles off the main road going through the town of Jasper. It has a main dwelling and other smaller tenant buildings, barns, well, etc., and consists of 160 acres, more or less."

The deed conveying the first-mentioned piece of property to the defendant is attached to the answer as an exhibit, and contains the following description: "the following described land and real estate lying and being in Madison County, Florida, to wit: All

those lots or parts of lots of land Numbers 174, 175, 176, 194, and 195 in Section 27, Township 3 North, Range 8 East; also 50 acres as described in deed from D. M. Wood and wife to K. R. White, recorded in Book 31, page 10, being in section 27, Township 3 North, Range 8 East, all in the State of Florida, Madison County, containing in the aggregate 892.7 acres according to an actual survey made by G. L. Tillman, C. E., the several lots being more particularly described as follows: Beginning at the Northwest corner of Lot 175, running West along the new State line 4670 feet to the original West land line of lot 175, thence continuing West on the new State line, which is North land line of Lot 176, 1550 feet to a point, thence South in Lot 176, 1914 feet to a point, thence East 198 to a point, thence South 1940 feet to the original South land line of lot 176, thence East along the original land line of lots 176 (and 175, 3497 feet to a point, thence South on lot 194) 694 feet to a point, thence East, still on lot 194, 1463 feet to a point, thence South, still on lot 194, 425 feet to the old State Line, thence Southeast along the old State line 1220 feet to the original East land line of lot 194, thence still along the old State line, being the present South land line of lot 195, 495 feet to a point, thence North, being bounded on the East by the land of A. L. Christian, 1700 feet to the original North land line of lot 195, thence West along the original North land line of lot 195, 2200 feet to a point, thence North through lot 174 and being bounded on the East by the land of Christian & Whaley 3501.58 feet to the new State line, which is the North land line of lot 174, thence West along the North land line of lot 174, 2492 feet to the Northwest corner of lot 174 and place of beginning; except from the above described property the following described tract: beginning at a point on the original land line dividing lots 174 and 175, 900 feet from the Northeast corner of said lot 175, running thence West 1961 feet to a point, thence South 700 feet to a point, thence West 650 feet to a point, thence South 1224 feet to a point, thence East 2322 feet to the East original land line of said land lot 175, 1750 feet to a point, thence East through lot 174, 836 feet to a point, thence North 1045 feet to a point; thence West 836 feet to the original East land line of lot 175, containing within said bounds 93 acres more or less. Also the Northwest quarter of the Southwest quarter and the North half of the North half of the South-

west quarter of the Southwest quarter of section 27, Township 3 North, Range 8 East, containing 50 acres, more or less, all of the above described property containing 892.7 acres, more or less."

Keiley's answer sets up that at the time of the execution of the contract referred to he "was ill, confined to his room, under the care of a physician, and physically unable to inspect the property" in Florida; that he had not prior to the contract "inspected or had any opportunity to inspect" the same; that the deed conveying the property to him was executed and delivered immediately after the contract was closed and before he "had an opportunity to inspect the Florida properties;" that immediately before the contract of sale was executed and the deeds accepted by the defendant the plaintiff and its agents, for the purpose of inducing him to act, fraudulently represented that "there were certain houses on the property [in Florida], when in fact there were no houses on the said property, and further orally represented to the defendant that there was a certain amount of acreage, to wit 892 acres of land in the K. P. White property . . when in fact there were only 777 acres;" that "all of these statements were false and untrue and known by the plaintiff and its agents to be false and untrue and were made by the plaintiff to the defendant for the purpose of inducing the defendant to purchase the said property in Florida and to accept the deeds thereto, and said statements did induce the defendant to purchase the said property located in Florida and to accept the deeds from the plaintiff to the said property;" that immediately before the contract was entered into plaintiff showed defendant an appraisal in writing dated Dec. 27, 1921, of the Florida property, which appraisal showed that two residences, six tenant houses, barns, and other buildings of the value of $5100. were located on said property, and that the property consisted of 892 acres, and plaintiff represented and stated to defendant that the residences, tenant houses, barns, and other buildings as shown in the appraisal were on the property, that the same were of the approximate value as shown in the appraisal and that the property consisted of 892 acres;" that upon inspection of the Florida property after the delivery to him of the deeds he discovered that there were no houses or buildings on either tract, and that there was a shortage in the acreage of the White tract as already stated; that the price at which he purchased the tract was $10,000; that

because of the deficiency in acreage he was entitled to apportionment of the purchase-money to the extent of $1500; that he had been damaged by reason of the misrepresentations as to the buildings on the land the sum of $7500; and that he elected to keep the land and to recover the value of the deficiency in acreage. He prayed that his damages be set off against the claim of the plaintiff; for judgment over for the amounts claimed by him in excess of the demands of the plaintiff; for cancellation of the note sued on and the deed made to secure the same. The allegation of the giving of the notice for the recovery of attorney's fees was denied.

The petitioner demurred to the answer generally on the grounds that no defense to the action was set forth; that it showed the defendant had ample opportunity to inspect the Florida properties, without alleging any reason for failure to do so, or that inspection was prevented by any act of plaintiff; and that it was shown that defendant had not, on discovery of the alleged fraud or since, offered to rescind and restore the status, but had elected to remain in possession. There were special demurrers to particular portions of the petition. All the demurrers to the answer were sustained; and the answer, except the denial of the averments of the petition as to the giving of notice for attorney's fees, was stricken. On the trial the court directed a verdict in favor of the plaintiff for the amount of the debt, with interest, attorney's fees, and costs. The defendant moved for a new trial, and the motion was overruled. Error was assigned on that ruling and on the sustaining of the demurrers and the striking of the answer. The special ground of the motion for new trial complained that no evidence was introduced "to show that any notice of attorney's fees was ever served upon movant, and without such notice the direction by the court of the verdict for attorney's fees was illegal and unlawful;" that the only evidence of service of such notice "was in the nature of opinion evidence," and the issue as to attorney's fees should have been submitted to the jury; and that the question whether or not defendant was in fact served with such notice should have been submitted to the jury. The proof of notice as to attorney's fees consisted of the testimony of an attorney for petitioner, that he forwarded the notice by registered mail, and that he received from the defendant a letter in response to the notice; also return receipt for a registered

letter addressed to the defendant, which receipt was signed "John Keiley. . . J. H. James, addressee's agent," and a letter signed by the defendant, which the attorney for petitioner testified was the one received in response to the notice.

■ When the deed was executed conveying the property from the Trust Company to Keiley, it represented the contract as finally agreed upon and adopted. The preliminary sales contract, executory in character, became merged into the deed. The terms of the deed became controlling, and any representations or terms contained in the executory sales contract which were not included in the deed will be treated as having been eliminated, abandoned, or discarded from the contract. *Loftis* v. *Clay,* 164 *Ga.* 845, 848 (139 S. E. 668). This is true because the purchaser, Keiley, is not undertaking to rescind the contract because of fraud on the part of the vendor entering into and inducing him to accept the deed as executed. He elects to abide the contract and to recover compensation for injury due to fraud. The deed contains no mention of the number of residences or outhouses or other improvements on the White property, as was the case in the executory sales contract. The petition alleges no reason why Keiley did not observe this omission from the deed, nor does it allege that the omission was unknown to Keiley. It must be assumed, therefore, that the deed, with such omission, represented the final matured agreement between the parties. In these circumstances Keiley can not recover damages because such buildings are not on the land as stated in the executory sales contract. Keiley's remedy for that damage was to have acted promptly upon the discovery of the alleged fraud, and to have asked for a rescission or reformation, provided he signed the contract under influences of actual fraud and was defrauded. The court, therefore, did not err in striking Keiley's answer in so far as it sought recovery of damages in the respect mentioned.

■ Under a proper construction of the deed from the Trust Company to Keiley, the sale of the land was by the tract and not by the acre. *Baker* v. *Corbin,* 148 *Ga.* 267 (96 S. E. 428) ; *Dorsett* v. *Roberds,* 172 *Ga.* 545 (158 S. E. 236). Under the Civil Code (1910), § 4122, it is provided that "If the sale is by the tract or entire body, a deficiency in the quantity sold can not be apportioned." That section also provides: "If the quantity is speci-

fied as 'more or less,' this qualification will cover any deficiency not so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud." Under the allegations of the answer, damages in the sum of $1500 are sought on the allegation that the defendant Keiley was induced to consummate the trade by the actual fraud of the vendor, the Trust Company. He alleges that the vendor represented that the tract of land in question contained 892 acres, when in fact it contained only 777 acres, a shortage or deficiency of 115 acres; that this shortage was known to the vendor at the time the representations were made, and that the purchaser acted upon the representation and was induced thereby to make the purchase. In *Finney* v. *Morris,* 116 *Ga.* 758 (42 S. E. 1020), this court said: "Where land is sold by the tract and described in the conveyance as so many acres, 'more or less,' a deficiency in the number of acres actually conveyed to the purchaser will not authorize an apportionment in the price agreed to be paid, if the purchaser admits that there was no intentional fraud upon the part of the vendor." In *Walton* v. *Ramsey,* 50 *Ga.* 618, the contest concerned the sale of a tract of land in a body containing 1200 acres, more or less, and it was contended that there was a deficiency of 156 acres. There was no fraud inducing the sale. This court quoted from *Beall* v. *Burkhalter,* 26 *Ga.* 564, "When the words 'more or less' are annexed to the quantity of land, it is against principle that the vendor should be responsible to assure any given number of acres, unless he practiced a fraud upon the purchaser." And further in the opinion it was said: "The principle recognized by that case and the Code is, that if there is actual fraud and deception on the part of the vendor of the land, or the deficiency in the quantity of the land is so gross as to be evidence of it, then the deficiency may be apportioned, but not otherwise." And see *Baker* v. *Corbin,* supra. Clearly, therefore, if there was no intentional fraud upon the part of the vendor with respect to the number of acres, there could be no apportionment or damages obtained by the vendee. But in such a case where there was actual or intentional fraud entering into the execution of the contract and inducing the agreement, a deficiency in the quantity can be apportioned. Civil Code (1910), §§ 4409, 4410; *Kendall* v. *Wells,* 126 *Ga.* 343 (55 S. E. 41). It is quite likely that the able trial judge overlooked in this instance the allegation of actual or

intentional fraud on the part of the vendor, which requires a different ruling. The demurrer to the answer admits the truth of the facts pleaded. We therefore have a case, as it now is presented, where the vendor was guilty of actual or intentional fraud in representing the number of acres and that the deficiency amounts to 115 acres out of an alleged total stated in the deed of 892. In these circumstances the answer set up a defense which required submission to the jury of the issue as to whether there was actual or intentional fraud; and if so, what was the relative value of the deficiency compared to the total number of acres, valued under the contract at $10,000. The language of the answer setting up the amount of the damage is subject to criticism, but no special demurrer was interposed. It is sufficient to withstand a general demurrer.

■ The judgment of the trial court on demurrer is reversed in so far as the demurrer was sustained to that portion of the answer seeking an apportionment because of a deficiency in the quantity sold. It is affirmed in respect to that portion of the answer which sought compensation or damages because of misrepresentations as to the improvements on the property.

■ The fourth headnote does not require elaboration.

*Judgment affirmed in part and reversed in part. All the Justices concur.*