32501, 32618. JORDAN v. FLYNT; and vice versa.

PER CURIAM.

This is an appeal from an order of the Superior Court of Spalding County, denying appellant's motion for summary judgment and granting appellee's motion for summary judgment; and cross appeal from that same order, denying appellee's motion to dismiss.

On May 5, 1973, a contract was entered into providing for the sale by appellee to appellant of 820 acres of land located in Hall County, Georgia. On May 30, 1973, the parties executed a first amendment to the purchase contract, which amendment revised the provisions of the contract concerning the purchaser's right to demand release of acreage from the security deed.

The purchase and sale of the land was closed on August 29, 1973. However, prior to closing, a revised sales contract was executed and back dated to May 5, 1973, it being the intent of the parties that the revised sales contract would supersede and replace the original contract and amendment thereto. The revised sales contract contained the identical release provisions as set forth in the first amendment to the original sales contract.[1]

---

[1] Paragraph 13 of the special stipulations in the revised sales contract provided in pertinent part:

The purpose of the revised sales contract was to shift liability for the sales commission to appellant in return for a lower per acre price and smaller down payment. The net cash result to the parties, however, was not altered.

At the closing, the appellant executed a previously prepared deed to secure debt to appellee in the amount of $407,000, which contained release provisions substantially the same as, though not identical to those contained in revised sales contract. The release provisons contained in the deed to secure debt provided that, "Grantee agrees to release portions of the property described herein from the lien of this instrument upon payment to him of the sum of $805.00 per acre for each acre sought to be released on the following terms and conditions: . . . (d) Grantee agrees to release one hundred forty-two (142) acres of the property on the terms and conditions set forth herein without any payment whatsoever upon the request of Grantor; and all payments made for the purpose of obtaining releases shall apply to the next maturing principal installment due under the note which this instrument was given to secure. The payment of the principal installments on the note which this instrument was given to secure as they mature

---

13. Seller agrees to release property secured by the security deed from time to time under the following terms and conditions.

A. Releases shall be granted at the rate of one (1) acre for each $805.00 increment received by seller in reduction of the property indebtedness of the security deed. . .

E. Grantor shall be entitled to release for all property payment, including down payment, pre-payment, and normal regular installment payments. Each payment upon the purchase money note shall apply to the payment next due under the note. All property payments shall apply towards credit to releases even though grantor does not elect to obtain such releases when property payments are made in a normal course of the note reduction herein. . .

H. No release shall be granted if any default exists under the purchase money security deed.

shall entitle Grantor to releases, all of which shall be cumulative." Thus, the security deed provided that a release of property would be made "without any payment whatsoever" while the revised sales contract provided for releases based upon payments tendered in reduction of principal.

After nearly two years, appellant requested release of one hundred and forty-two (142) acres as provided for in paragraph (d) of the security deed. In accordance with the terms and conditions contained in that instrument, appellant furnished appellee with a quitclaim deed and survey of the acreage for which release was requested. Appellee responded that the request of January 12, 1976 would not be honored until 1975 real estate taxes had been paid. Appellant promptly paid those taxes, and by letters dated February 24 and March 24, 1976, reiterated his request for release. Appellee refused to execute the quitclaim deed despite appellant's continuing demands, and failed to advise appellant of any reasons for his refusal to release this requested acreage.

As a result of his refusal to release the requested acreage, appellant filed this action on April 14, 1976, seeking specific performance of the release provisions contained in the deed to secure debt, or, in the alternative, rescission, restitution and damages.

Appellee filed a motion to dismiss on grounds that the release provision was too vague to be enforceable. On August 29, 1976, while this case was pending, an interest payment came due. Appellant refused to make the payment because of appellee's refusal to execute the quitclaim deed, which refusal appellant contends was a prior breach of the contract. Appellee notified the appellant that the note was in default and shortly thereafter filed a motion for summary judgment. Appellee's motion asserted that according to the terms and conditions of the security deed, appellant's default relieved appellee of his duty to release the acreage requested. Appellant then filed a motion for summary judgment and a hearing on both motions was set for November 19, 1976. On November 18, 1976, one day before the scheduled hearing, appellant was served with an affidavit executed by appellee, which for the first time,

advised appellant that the requests for release had not been executed because the quitclaim deeds tendered contained too much road frontage. Following notice of this defect, appellant tendered a revised quitclaim deed and survey in accordance with the terms of the security deed, which appellee refused to execute.

Subsequent to a hearing, the court overruled appellee's motion to dismiss, overruled appellant's motion for summary judgment and granted appellee's motion for summary judgment. It is from this order that the parties appeal.

1. The complaint, as finally amended, sought specific performance of paragraph (d) of the deed to secure debt, which provided for the release of one hundred forty-two (142) acres of encumbered property upon compliance with the terms and conditions set forth in the instrument. Appellant contends that the court erred in holding that there was no contract to release the one hundred forty-two (142) acres in question. It appears that the trial court based its conclusion upon the premise that the release provision sought to be enforced did not appear in the sales contract, but for the first time appeared in the deed to secure debt. The court recognizing that the sales contract had provided for the giving of a security deed, however, held that since the security deed was not a contract, the release provisions contained therein were unenforceable.

Both this court and the Court of Appeals have followed the general rule that antecedent sales contracts covering the purchase and sale of real property merge in a subsequent deed involving the same property. Thus, where in a contract for sale of land the parties execute a preliminary sales contract and subsequently reduce that contract to a finality evidenced by a deed to secure debt, the terms of the preliminary contract, where not otherwise reserved, are merged into the deed, and those terms, conditions or recitals contained in the preliminary sales contract which are not included in the deed are considered as eliminated, abandoned or discarded. *Keiley v. Citizens Sav. Bank &c. Co.,* 173 Ga. 11 (159 SE 527) (1931); *Taylor v. Board of Trustees,* 185 Ga. 61 (194 SE 169) (1938); *Loftis v. Clay,* 164 Ga. 845 (139 SE 668) (1927); *Augusta Land*

*Co. v. Augusta R. &c. Co.,* 140 Ga. 519 (79 SE 138) (1913).

Accordingly, although the terms of the preliminary sales contract may vary from those contained in the deed to secure debt, the deed alone must be looked to for determination of the rights of the parties.

2. Appellee Flynt cross appeals from the denial of his motion to dismiss and raises the sole issue of whether the release provisions contained in the security deed provide a sufficient means of identifying the property to be released so as to be capable of enforcement by specific performance.

The deed to secure debt contains numerous limitations with respect to size, road frontage and starting points of acreage which appellant could select to be released.[2]

---

[2] These limitations were set forth in the deed to secure debt as follows:

(a) All property lying east of Georgia Highway 52 (Tract 1) shall be released from the northern or southern boundary line of Tract 1; all property west of Georgia Highway 52 and north of Joe Black Road (Tract 2) shall be released from the northern or western boundary line of Tract 2; and all property lying west of Georgia Highway 52 and south of Joe Black Road (Tract 3) shall be released from the southern boundary line of Tract 3 or along the right-of-way of Joe Black Road from the western boundary line of Tract 3.

(b) No releases shall be made in such a manner that would cause the ratio which the acreage being released bears to the frontage on Georgia Highway 52 or Joe Black Road being released to exceed the ratio which the total acreage in each tract bears to the total frontage on Georgia Highway 52 and Joe Black Road in each tract.

(c) No parcel shall be released in tracts of less than ten (10) acres and all releases shall be made to the full depth of the tract in which the release is requested.

(e) No portion of the property shall at any time be left without access to a dedicated public road

"The provision is sufficiently definite to be performed and hence is not so indefinite as to be unenforceable. 41 ALR3d 7 at 44-54. No case... requires that the description of the property to be released from a deed to secure debt be as specific as the description of the property in the deed itself must be. See *Honea v. Gilbert,* 236 Ga. 218 (223 SE2d 115) (1976)." *Cochran v. Teasley,* 239 Ga. 289 (236 SE2d 635) (1977). The court did not err in denying appellee's motion to dismiss.

3. In granting appellee's motion for summary judgment, the trial court denied appellant's prayer for specific performance, "for the reason that under the undisputed evidence now before the court plaintiff has defaulted and is not now entitled to any relief sought, nor was he entitled to any relief when the complaint was filed, for the reason that the survey and quitclaim deed tendered by him to the defendant did not meet the requirements of the sales contract as to road frontage."

(a) We first consider whether the failure of appellant to make a payment due for the first time after suit was filed is a sufficient reason for denying specific performance, in light of the fact that he was current in his obligations at the time he filed suit. In *Kirk v. First Ga. Invest. Corp.,* 239 Ga. 171 (236 SE2d 254) (1977), we held that the decree of specific performance was improper since the plaintiff was in default at the time suit was filed, he remained in default at the time of the decree, and the decree of specific performance was not conditional on the plaintiff curing his default.

We hold now that where the plaintiff is not in default when he files suit, the occurrence of a subsequent default of the plaintiff is not by itself a sufficient reason for denying specific performance. The holding in *Kirk* was based on the equitable principle that in order to obtain equitable relief the petitioner must act equitably with regard to the other party. Code Ann. § 37-104. In this situation the maxim means that the defendant should not be compelled to perform unless he receives the agreed exchange which is a condition of his performance under the contract.

Since appellee is not required to perform under the

terms of this contract if appellant is currently in default, specific performance may not be decreed against appellee unless it is conditioned on appellant's curing of any default on his part. But if the decree is so conditioned, the equitable principle on which *Kirk* is based will be satisfied. That principle does not require that appellant suffer summary judgment against his petition for specific performance. *Smith v. David,* 168 Ga. 511 (148 SE 265) (1929); 5A Corbin on Contracts, § 1190, p. 359 (1964). See Restatement of Contracts, §§ 373, 374. Therefore, the trial court erred in granting summary judgment for appellee because of the failure to make the interest payment which came due after suit was filed but before judgment was rendered.

(b) Appellee also contends that appellant's failure to submit a correct quitclaim deed at a time when he was not in default deprives appellant's right to demand specific performance of the release provisions contained in the deed to secure debt. As already noted, by letter dated January 12, 1976, appellant requested that appellee execute a quitclaim deed prepared by appellant releasing 142 acres of the property described in the deed to secure debt. Appellee responded that this request would not be honored until 1975 real estate taxes had been paid. At that time, appellee made no mention of any errors in the quitclaim deed that would violate the release provisions contained in the deed to secure debt. Appellant promptly paid these taxes and by letter dated February 24, 1976, reiterated his request for release. In that letter appellant's counsel urged that "if there is some reason for not executing the deed, I would appreciate your so advising me." No response was made to this letter. On March 31, 1976, counsel for appellant again requested release and informed counsel for appellee that "to this date I have neither received the executed deed nor have I received any communication as to the reasons for not executing the deed." Despite this third demand, appellee refused to execute the quitclaim deed, and further, failed to advise appellant of any reason or grounds for appellee's failure to comply with the terms of the security deed in respect to release of the requested acreage. It was not until November 18, 1976, seven months after the filing of this

suit, and eleven months following his initial request for release, that the appellant was first notified of appellee's contention that the quitclaim deed tendered in January of 1976 provided for slightly more road frontage than the terms of the security deed permitted. Appellant promptly investigated and found that the surveyor had made an error. Thereupon, appellant tendered to the appellee in lieu of all prior quitclaim deeds and surveys previously tendered, a revised quitclaim deed and survey which in all respects complied with the terms of the security deed.

Under these circumstances it could not be said that the appellee has not waived his right to rely on minor errors in the quitclaim deed pertaining to road frontage.

"Waiver is a voluntary relinquishment of some known right, benefit or advantage, which, except for such waiver, the party otherwise would have enjoyed." *Pfeffer v. Arrendale,* 114 Ga. App. 684 (152 SE2d 651) (1966). Waiver may be established by expressed statements or implied by acts and conduct from which an intention to waive may reasonably be inferred. Ordinarily, mere silence is not sufficient to establish a waiver unless there is an obligation to speak. See, 28 AmJur2d 836, Estoppel and Waiver, § 154 et seq. (1966).

Although a party "may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure." Altman v. McCollum, 107 Cal. App. 2d 847, 859 (236 P2d 914) (1951); Sullivan v. Helbing, 66 Cal. App. 478 (226 P 803) (1924); Brady v. Carman, 179 Cal. App. 2d 63 (3 Cal. Rptr. 612) (1960).

In the case at bar, when the appellee spoke, as he did in the January letter notifying appellant of a default in payment of 1975 taxes, appellee failed to make a full and fair disclosure of the facts respecting the defaults that he then claimed. Appellee's conduct succeeded in lulling the appellant into a sense of security to his detriment.

Questions of the existence of waiver are usually questions to be settled by the trier of fact. *Atlas Assur. Co. v. Kettles,* 144 Ga. 306 (87 SE 1) (1915); *Harp v. Fireman's*

*Fund Ins. Co.,* 130 Ga. 726 (61 SE 704) (1908); *Employees Assur. Society v. Bush,* 105 Ga. App. 190, 195 (123 SE2d 908) (1962). Since this appeal is before us upon the grant of summary judgment we cannot decide whether the appellee waived his right to rely on errors in the original quitclaim deed tendered to the appellee, but upon remand of this case must leave that issue to the trier of fact.

4. Appellant contends that even though an action for specific performance may not be brought, the court erred in granting appellee's motion for summary judgment since appellant may have been allowed damages at law.

"In order for the defendant to prevail on a motion for summary judgment, the defendant must negative all the plaintiff's claims and show that the plaintiff is not entitled to recover under any theory of the case. *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14 (198 SE2d 381) (1973). Where plaintiff seeks equitable relief, in order for the defendant to prevail on motion for summary judgment, the defendant must negative any claim plaintiff would have to damages, as well as any claim plaintiff would have to equitable relief." *Cochran v. Teasley,* 239 Ga. 289, 292, supra; *Kirk v. First Ga. Invest. Corp.,* 239 Ga. 171, supra.

Even if the trial court should determine on remand that the appellant is not entitled to specific performance, he may still be entitled to damages at law for a breach of the release provisions of the security deed by the appellee, and summary judgment for the appellee for this additional reason is therefore improper.

In light of what we have said in Divisions 1, 3 and 4, the judgment of the lower court granting appellee's motion for summary judgment must be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed in Case No. 32501; affirmed in Case No. 32618. All the Justices concur, except Undercofler, P. J., who concurs in the judgment only, Nichols, C. J., and Bowles, J., who concur specially, and Jordan, J., who dissents.*

ARGUED SEPTEMBER 14, 1977 — DECIDED DECEMBER 5, 1977 — REHEARING DENIED DECEMBER 15, 1977 IN CASE NO. 32501.

*Harland, Cashin, Chambers, Davis & Doster, Harry L. Cashin, Jr., Simuel F. Doster, Jr.,* for appellant.

*Smalley & Cogburn, Robert H. Smalley, Jr., Arnall, Golden & Gregory, Edward S. Sams, H. Fred Gober, Paula Abercrombie Ball,* for appellee.

JORDAN, Justice, dissenting.

In my opinion this case is controlled by our recent decision in *Kirk v. First Ga. Invest. Corp.,* 239 Ga. 171 (236 SE2d 254) (1977).

In that case we reiterated the age-old maxim that to receive equity one must do equity. Code Ann. § 37-104. Based on that maxim we made it clear that a party seeking specific performance of a contract, as a condition precedent to his obtaining a remedy, must show that he has done or offered to do, or is ready and willing to do, all the material acts required of him by the contract. And, further, that "the party seeking specific performance must not only show that he has complied with the terms of the contract at the commencement of the suit, but also that he is able, ready and willing to do those other future acts which are required of him under the contract." *Kirk,* supra, p. 174. Application of these broad equitable principles to the facts of this case lead to the inevitable conclusion that the trial court did not err in granting the defendant's motion for summary judgment.

It is clear that the undisputed pleadings in this case show that the plaintiff was not in default at the time of the commencement of his suit; however, at that time he had failed to submit a correct deed to the defendant and was not then entitled to have it executed by the defendant. It is equally clear that after the commencement of the suit the plaintiff defaulted under the express terms of the contract and has made no proffer or tender that he was ready, willing and able to perform under the contract as required of him. And further, that at the time the trial court entered the order it was clear that the plaintiff had not complied with the principles laid down by this court in the *Kirk* opinion.

Applying the *Kirk* principles to the instant case, the

plaintiff was not entitled to specific performance at the time the decree was entered and the trial court did not err in so holding. Neither did the court err in granting appellee's motion for summary judgment.

I respectfully dissent.