**ALLSTATE FINANCIAL CORPORA-TION, Plaintiff-Appellant,**

v.

**DUNDEE MILLS, INC., Defendant-Appellee.**

No. 86–8073.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1986.

E. Kendrick Smith, Atlanta, Ga., for plaintiff-appellant.

A. Felton Jenkins, Jr., Atlanta, Ga., for defendant-appellee.

Before HILL, Circuit Judge, HENDER-SON *, Senior Circuit Judge, and LYNNE **, Senior District Judge.

HILL, Circuit Judge:

## FACTS

Allstate Financial Corporation ("Allstate") is in the business of making secured loans and financing and factoring receivables. In June, 1983, Allstate entered into a financing arrangement with Bleckley Lumber Company d/b/a Bleckley Cotton Company ("Bleckley") and Bleckley's principal, William Carlton Lawson, whereby Allstate agreed to factor certain of Bleckley's accounts receivable. Bleckley was engaged

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

in the business of buying and selling cotton. Pursuant to this financing arrangement, Bleckley granted Allstate a continuing general lien and security interest in, *inter alia,* all of Bleckley's existing and future accounts receivable and contract rights. In addition, Bleckley authorized Allstate to collect all of its accounts receivable directly from the account debtors.

Dundee Mills, Inc. ("Dundee") was Bleckley's principal account debtor. On September 13, 1983, Allstate gave written notice to Dundee, pursuant to the security agreement and O.C.G.A. § 11-9-318 (1982), of the assignment and its security interest in Bleckley's accounts receivable. The notice directed Dundee to make all payments for cotton purchased from Bleckley directly to Allstate. Dundee did not dispute the validity of this notice and subsequently submitted payments to Allstate on 108 Bleckley invoices.

Allstate brought this suit to collect on fifteen invoices that it claimed Dundee wrongfully paid to Bleckley or third parties in violation of Allstate's security interest. Allstate did not advance funds on any of the invoices at issue, but claims it was entitled to receive these payments under the terms of the security agreement. On appeal, Allstate asserts its claim as to only nine of these payments.

After they completed discovery, both parties filed motions for summary judgment. Dundee requested summary judgment as to all counts of the complaint but Allstate did so for only four of the checks at issue. Rather than discuss the payments by invoice number or date, the district court assigned each payment a check number. The checks at issue on appeal fall into two general groups: Check Nos. 1-6 and 9 were made payable to the Commerce Union Bank of Memphis. Dundee claimed, and the district court found, that Bleckley was unable to meet its contractual obligations to supply cotton to Dundee because of financial difficulties. Thereafter, Bleckley's principal, Lawson, made arrangements for Whitsett Cotton Company ("Whitsett") to sell cotton to Dundee in satisfaction of Bleckley's unfulfilled contracts. Thus, the district court found that Check Nos. 1-6 were sent to Whitsett's bank for cotton that Whitsett sold to Dundee under this arrangement. Lawson as broker, had merely located the cotton for Whitsett to purchase and sell to Dundee. Check No. 9 was also payable to Whitsett's bank but the district court did not determine whether this was for cotton purchased pursuant to the above arrangement or under independent dealings between Dundee and Whitsett. Moreover, Dundee contended, and the court found, that Allstate had consented to the payments to Whitsett in a telephone conversation and letter from Allstate's president in January, 1984.

At Lawson's direction, Dundee issued Check Nos. 10-11 payable to Bleckley. The district court found that these checks were in payment of cotton furnished by Lewis Gin & Peanut Co. ("Lewis Gin"). Lawson, as broker, had located and delivered the cotton and the sale was by Lewis Gin in satisfaction of a Bleckley contract which Bleckley could not fulfill.

Allstate disputes Dundee's characterization of the "sales" by Whitsett and Lewis Gin. Instead, Allstate claims that they were financing arrangements designed to thwart Allstate's security interest. Because Dundee's business records and Bleckley's invoices showed that the cotton was sold by Bleckley and the parties did not follow the Southern Mill Rules for assigning contracts, Allstate claimed that Bleckley was the seller, not Whitsett and Lewis Gin. Moreover, Allstate claims that its "consent" was prospective only and limited to cotton purchased directly from Whitsett. Thus, Allstate contends that there were genuine issues of material fact regarding these transactions.

Nevertheless, the parties agree that Allstate had possession of Check Nos. 1-3, 6 and 9 and sent them to Bleckley for handling. Dundee mistakenly sent these five checks, payable to Commerce Union Bank, to Allstate. Allstate's employees, apparently without looking submitted one of

these checks for deposit to Allstate's account but the bank would not accept it. Thereafter, Allstate mailed all five checks to Bleckley with the following explanation: "Enclosed is the check that was erroneously deposited, we got it back and are returning it herewith. We also enclose four additional checks that were sent to us by Dundee Mills payable to Commerce Union Bank of Memphis." (Winkler Dep., Def. Ex. 8). Allstate did not ask Dundee to reissue these checks in Allstate's name or demand reimbursement from Bleckley.

Although Allstate never had possession of Check Nos. 10 and 11, one of Allstate's employees discovered these payments during a routine monthly inspection of Bleckley's records shortly after Dundee made them. At that time, Allstate reprimanded Bleckley for accepting the checks but took no action to recover these payments.

After Allstate's discovery of these payments, the financial arrangement with Bleckley continued as before. Allstate did not raise any further questions or seek to recover these funds from Dundee until quite some time later. The impetus for Allstate's belated interest in these checks was a fraud perpetrated on Allstate in March and April of 1984. The malefactors, Lawson and Bleckley, apparently caused Allstate to advance substantial sums of money on phony invoices. Dundee was not involved in this scheme. Subsequently, Bleckley defaulted on its indebtedness and went out of business, Lawson was convicted of fraud and Allstate was left holding a worthless judgment against Bleckley and Lawson. At that time, Allstate brought this action, seeking to recover these payments from Dundee.

The district court denied Allstate's motion for partial summary judgment and granted Dundee's motion for summary judgment as to all the checks. The court held that these payments were not for Bleckley accounts. Moreover, the court concluded that Allstate had acquiesced in or consented to Check Nos. 1–6 and 9 and waived its rights with respect to Check Nos. 10 and 11.

## DISCUSSION

To begin, we note that the terms of Allstate's financing arrangement with Bleckley entitled Allstate to collect all of Bleckley's accounts receivable, not merely accounts for which Allstate provided the financing. (R. 1–1 Ex. A). Therefore, if the disputed checks were payments for Bleckley receivables, it is irrelevant that Allstate did not advance funds on these accounts.

The district court decided this case on the parties' cross-motions for summary judgment. Summary judgment is proper only when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The parties only agree as to the facts underlying Dundee's waiver defense. The issue then is whether Allstate's conduct constituted waiver as a matter of law.

Although Allstate's right to collect Bleckley's accounts receivable arose under the Uniform Commercial Code, O.C.G.A. § 11–9–318 (1982), common law equitable principles also apply to UCC transactions. O.C.G.A. § 11–1–103 (1982). Waiver is a voluntary relinquishment of a legal right, O.C.G.A. § 1–3–7 (1982), that may be express or implied from conduct. *James v. Mitchell*, 159 Ga.App. 761, 285 S.E.2d 222, 224 (1981). Specifically, an assignee's conduct may result in the waiver of its rights under section 9–318. *Cf. Estate of Haas v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136, 1140–41 (5th Cir.1980) (assignment invalidated by acquiescence in wrongful payment and failure to demand subsequent payments). Under Georgia law, waiver is a matter of intent: the evidence must so clearly indicate an intent to relinquish a known right as to exclude any other reasonable explanation. *See, e.g., D.I. Corbett Electric, Inc. v. Venture Construction Company*, 231 S.E.2d 536, 538 (Ga.App. 1976). Although waiver is generally a jury question, *Jordan v. Flynt*, 240 Ga. 359, 240 S.E.2d 858, 863 (1977), the district court was entitled to decide the legal issue on the cross-motions for summary judgment because the parties agreed on the necessary facts.

**1076**

Allstate claims that it did not waive its right to collect Bleckley's accounts receivable, particularly those due from Dundee, because it took all the steps necessary to perfect its security interest under O.C.G.A. § 11–9–318. Dundee however, does not contend that Allstate waived its right to collect all of Bleckley's accounts from Dundee, but rather that it waived its right to collect the specific payments at issue on appeal.

As evidence of Allstate's intent, Allstate's vice president testified at his deposition that he had investigated these checks and determined that Allstate had not advanced funds against these particular invoices, there were no problems with Bleckley's account and Allstate could release the funds to Bleckley. (Winkler Dep. 114–17, 122–23 and 150–57). Allstate argues that its inaction was irrelevant because it never had possession of Check Nos. 10–11 and could not deposit Check Nos. 1–3, 6 and 9 because they were made payable to Whitsett's bank. Nevertheless, if Allstate had intended to assert its rights, it could have retained the checks it held and demanded that Dundee reissue them in Allstate's name or required reimbursement from Bleckley. Likewise, Allstate had the right to demand immediate reimbursement from Bleckley for Check Nos. 10–11 or, at that time, assert its rights against Dundee under section 11–9–318. Instead, Allstate forwarded Check Nos. 1–3, 6 and 9 to Bleckley and took no action to enforce its rights to Check Nos. 10–11 until after it suffered a loss on its financing arrangement with Bleckley.

█ Similarly, one may waive rights by acquiescing in another's conduct. If

"a party having an interest to prevent an act being done has full notice of its having been done, and acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have had if it had been done by his previous license."

*Smith v. Hanna Mfg. Co.*, 68 Ga.App. 475, 23 S.E.2d 552, 559 (1942) quoting 31 C.J.S. *Estoppel* § 71 (emphasis omitted). Although Allstate knew of these payments to Bleckley and Commerce Union Bank in late 1983, it did not demand reimbursement from Dundee until Allstate was later left with an uncollectible judgment against Bleckley and Lawson. If Allstate had immediately exercised its rights, Dundee may have had recourse against Bleckley; thus, Allstate's apparent consent prejudiced Dundee's ability to recover these payments.

By its conduct, Allstate acquiesced in these seven payments and thus voluntarily relinquished its contractual and statutory right to receive and control these payments. Under the undisputed facts, the district court did not err in concluding that Allstate had acquiesced in or waived its right to these payments as a matter of law.

█ With regard to Check Nos. 4 and 5, the record does not contain such undisputed facts. The record does not establish whether Allstate ever had possession of these checks or when it learned of their issuance. The district court found that Whitsett sold the cotton to Dundee and that Allstate had consented to the payments to Whitsett. This conclusion, however, required factfinding from disputed facts. Allstate submitted evidence that Bleckley bought cotton using its own checks and delivered it to Dundee pursuant to a Bleckley contract. Moreover, despite Dundee's evidence of an assignment of contract, both Bleckley's and Dundee's business records show that the cotton was "bought of" Bleckley. Finally, Allstate contends that its consent to direct payments to Whitsett was for future transactions only. Because genuine issues of fact remained, it was error for the district court to grant summary judgment on Check Nos. 4 and 5.

AFFIRMED in part; and REVERSED and REMANDED in part.